## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| SONYA P. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02050-TLP-jay |
| v. | ) | |
| | ) | JURY DEMAND |
| SHELBY COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR REVISION OF AN INTERLOCUTORY ORDER AS TO HER CLAIM UNDER 42 U.S.C. § 1983, DENYING PLAINTIFF'S MOTION FOR REVISION OF AN INTERLOCUTORY ORDER AS TO THE REMAINDER OF HER CLAIMS, AND DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES ARISING OUT OF PLAINTIFF'S SECOND MOTION FOR REVISION

Plaintiff, Dr. Sonya P. Williams, moves for revision of this Court's interlocutory order granting partial summary judgment (ECF No. 88), as to her Fourteenth Amendment Due Process claim. (ECF No. 164.) Defendant Shelby County Board of Education (the "Board") timely responded in opposition. (ECF No. 170.) And Plaintiff recently moved again for revision of that same order. (ECF No. 206.) This time, however, Plaintiff requests the Court's reconsideration on all of her claims, reversing the grant of summary judgment on the dismissed claims and granting her summary judgment on the claims still pending here, as well as all the revived claims. (*See id.*) Again, Defendant timely responded in opposition and requested attorney fees incurred in its response. (ECF No. 211.)

For all the reasons below, the Court **GRANTS** Plaintiff's motion for revision of an interlocutory order as to her claim under 42 U.S.C. § 1983 (ECF No. 164), and **DENIES** her

motion for revision of the remainder of her claims (ECF No. 206).  The Court also **DENIES** Defendant's motion for attorneys' fees incurred in responding to Plaintiff's second motion. (ECF No. 211 at PageID 5984.)

## BACKGROUND

This case is about Plaintiff's dismissal from the Shelby County School System ("SCS") and her unsuccessful attempts later to acquire another position with SCS.  (*See* ECF No. 1.) Plaintiff filed a five-count complaint.  She alleges  (1) retaliation in violation of the First Amendment;[1] (2) violation of the Due Process Clause of the Fourteenth Amendment; (3) violation of the Tennessee Public Protection Act; (4) retaliation under Title VII of the Civil Rights Act of 1964; (5) and violation of the Tennessee Teacher Tenure Act ("Tenure Act"), Tennessee Code Annotated § 49-5-511(b).  (*Id.*)  Defendant then moved for summary judgment on all Plaintiff's claims (ECF No. 42), and Plaintiff timely responded to the motion (ECF Nos. 46 & 76).

The Court granted in part and denied in part Defendant's summary judgment motion. (ECF No. 88.)  The order dismissed almost all of Plaintiff's claims, except for those under the Tenure Act and the Title VII claims related to harassment, referrals to Labor Relations, the written reprimand, and the negative job evaluation.  (ECF No. 88 at PageID 2647.)  That order undergirds both of Plaintiff's motions here.  (ECF Nos. 164 & 206.)

The Court will now summarize Plaintiff's claims and the Court's previous holdings as they relate to the current motions.  The Court adopts its earlier factual findings (ECF No. 88 at PageID 2615–18), unless otherwise discussed in this order.

---

[1] Plaintiff voluntarily dismissed her First Amendment prior restraint claim.  (ECF No. 40.)

First, Plaintiff claimed that she was terminated because she reported ongoing testing fraud and grant money misappropriation to state and local officials.  (ECF No. 46 at PageID 291.)  The Court dismissed Plaintiff's First Amendment retaliation claim, holding that the First Amendment did not protect Plaintiff's speech, because the speech arose from her job and she reported fraud to advance the ordinary responsibilities of her employment.  (ECF No. 88 at PageID 2627.)

Plaintiff also claimed under 42 U.S.C. § 1983 that Defendant deprived her of her property interest in continued employment without due process of law in violation of the Due Process Clause of the Fourteenth Amendment.  (ECF No. 1 at PageID 2.)  Plaintiff claimed that Defendant deprived her of her property interest in continued employment by failing to evaluate her properly and place her on the reemployment list, as required by the Tenure Act.  (*Id.*)  The Court dismissed this claim because Plaintiff did not show that Defendant failed to place her name on the reemployment list after excessing her, as required by Tennessee Code Annotated § 49-5-511(b).  (ECF No. 88 at PageID 2631.)

Next, Plaintiff claimed that Defendant violated the Tennessee Public Protection Act ("TPPA") by terminating her employment in retaliation for reporting and refusing to participate in illegal activities.  (ECF No. 1 at PageID 2.)  The Court held that Plaintiff could not meet her burden of proving that she was terminated *solely* for reporting illegal activity, under the TPPA, because Defendant eliminated the program where Plaintiff worked after the state withdrew the grant funding for that program.  (ECF No. 88 at PageID 2633.)  So the Court dismissed Plaintiff's TPPA claim.  (*Id.*)

The Court next addressed Plaintiff's claims for retaliation under Title VII.  Again, Plaintiff anchored these claims to her reporting ongoing testing fraud and misappropriation of

grant funding to state and local officials.  Plaintiff alleged these adverse employment actions following her protected activities:  (1) harassment over her EEOC complaint by her supervisors "immediately after" she started her new position at the AEP; (2) referrals to Labor Relations; (3) a written reprimand for her whistleblowing activity; (4) a negative job evaluation; and (5) termination.  (ECF No. 46 at PageID 272–74.)  The Court found that Plaintiff established a prima facie case of retaliatory harassment and there remained material issues of fact.  And so the Court denied Defendant's motion for summary judgment on issues 1-4.  (ECF No. 88 at PageID 2635–39.)  But the Court dismissed Plaintiff's claim of retaliatory termination (issue 5) because, given the state's withdrawal of funding, she failed to show that illegal retaliation was the but-for cause of her termination.  (*Id.* at PageID 2644.)

Finally, the Court addressed Plaintiff's claim under the Tenure Act, Tennessee Code Annotated § 49-5-511(b).  The Court denied Defendant's motion for summary judgment on this claim because there remains a genuine dispute of material fact over whether Defendant violated the Act when Superintendent Hopson, and not the Board, terminated Plaintiff.  (ECF No. 88 at PageID 2645.)

All in all, the Court denied summary judgment as to her Tenure Act claim and her retaliation claim relating to harassment, referrals to Labor Relations, the written reprimand and the negative job evaluation.  (ECF No. 88 at PageID 2647.)  Those claims will go to trial by jury.  Now Plaintiff asks the Court to reevaluate that ruling on her claims it dismissed.

## **LEGAL STANDARD**

A district court has the inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment.  *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945–46 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.

1991)).  Under Federal Rule of Civil Procedure 54(b), "any [interlocutory] order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.  Fed. R. Civ. P. 54(b); *see also*, *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.").  Courts revise interlocutory orders only when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.  *Louisville Jefferson Cnty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)).

Under Local Rule 7.3, "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may move, pursuant to Fed. R. Civ. P. 54(b), for the revision of any interlocutory order made by the Court."  W.D. Tenn. R. 7.3(a).  The motion for revision must show:

(1)     a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or

(2)     the occurrence of new material facts or a change of law after the time of such order; or

(3)     a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

W.D. Tenn. R. 7.3(b).

"Motions 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *In re Regions Morgan*

5

*Keegan Secs., Derivative, and ERISA Litig.*, No. 07-2784, 2010 WL 5464792, at *1 (W.D. Tenn. Dec. 30, 2010) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). "Although a court can grant motions to revise its prior rulings, it 'should not do so in the vast majority of instances, especially where such motions restyle or rehash the initial issues.'" *In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2011 WL 3793777 (E.D. Tenn. Aug. 25, 2011) (quoting *White v. Hitachi*, No. 3:04-cv-20, 2008 WL 782565 (E.D. Tenn. March 20, 2008)).

## <u>ANALYSIS</u>

### I.     Plaintiff's Motion for Revision as to Her Fourteenth Amendment Due Process Claim

Plaintiff alleges that she meets all three justifications for revision of an interlocutory order as to her Fourteenth Amendment Due Process claim:  (1) there is newly available evidence, (2) there was change in the law after the order's entry, and (3) there is a need to prevent manifest injustice.  (ECF No. 164-1 at PageID 4759–60.)

#### A.     Defendant's Argument that Plaintiff Cannot Possibly State a Claim Under 42 U.S.C. § 1983 is Unavailing

Defendant argues that Plaintiff has no constitutionally protected right in continued employment because Defendant laid her off when it abolished her position after the state cut the grant funding.  (ECF No. 170 at PageID 4902–03.)  And if Plaintiff does not have a constitutionally protected right in continued employment, she cannot make a claim under 42 U.S.C. § 1983, no matter if Defendant placed her on the reemployment list.

##### 1.     *Kelley v. Shelby County Board of Education*, 751 F. App'x 650 (6th Cir. 2018).

Defendant relies on *Kelley v. Shelby County Board of Education*, 751 F. App'x 650 (6th Cir. 2018), for its proposition that Plaintiff has no constitutionally protected right in continued

6

employment.  (ECF No. 170 at PageID 4902–03.)  In that case, five teachers sued the Board after being excessed as part of a reduction in force during the merger between Memphis City Schools and Shelby County Schools.  *Kelley*, 751 F. App'x at 652.  The *Kelley* plaintiffs argued that tenured teachers have a constitutionally protected property interest in their continued employment under the Tenure Act, even when dismissed because of reductions in force.  *Id.* at 656.

The *Kelley* Court applied a 42 U.S.C. § 1983 analysis to Tenure Act.  The Sixth Circuit held, as Defendant rightly notes, that the plaintiffs had no constitutionally protected property interest in continued employment and affirmed the district court's order dismissing the § 1983 claim.  *Id.* at 658.  But Defendant misreads the implications of the *Kelley* Court's holding for this case.

By the time the case landed in the 6th Circuit, the state legislature had amended the Tenure Act so that court had two competing versions in that case:  the 2012 version ("2012 Tenure Act") and the 2014 version ("2014 Tenure Act").  The 2012 Tenure Act said "[w]hen it becomes necessary to reduce the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or for other good reasons, the *board shall be empowered to dismiss* such teachers or nonlicensed employees *as may be necessary*."  Tenn. Code Ann. § 49-5-511(b)(1) (2012) (emphasis added).  In the 2014 Tenure Act, the legislature changed that language to read:

> When it becomes necessary to reduce the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or for other good reasons, the *board shall be empowered to dismiss* such teachers or nonlicensed employees *based on their level of effectiveness determined by the evaluation . . . .*"

Tenn. Code. Ann. § 49-5-511(b)(1) (2014) (emphasis added).

The effective date of the 2014 Tenure Act was July 1, 2014.  *Kelley*, 751 F. App'x at 657. The Board terminated the *Kelley* plaintiffs the day before.  *Id.*  And so, the Sixth Circuit applied the 2012 Tenure Act in determining whether the teachers had a protected property interest in their continued employment.  The *Kelly* Court then held:

> [u]nder the 2012 version [of the Tenure Act], the Teachers had no property interest or a reasonable expectation that they would not be excessed based on their individual merits, qualities, circumstances, or performance.  The 2012 version did not place any limits on how the layoffs in the event of a [reduction in force] should occur—only that the decisions should be made by the Board.  The teachers accordingly had no protected property interest.

*Id.* at 658.  The Sixth Circuit reasoned that the statutory language of the 2012 Tenure Act "in no way conditions the abolition of a position on the individual circumstances of the employee."  *Id.* at 658.

But it distinguished the 2014 Tenure Act, noting that it placed individualized merit evaluations on teachers excessed for reductions in force "based on their level of effectiveness determined by evaluation . . . ."  *Id.* (citing Tenn. Code Ann. § 49-5-511(b)(1) (2014)).  And in dicta, the Sixth Circuit left the door open for § 1983 plaintiffs terminated because of reductions in force under the 2014 Tenure Act.  Besides the differences in requirements for dismissing teachers, the *Kelley* Court also noted that the 2014 Tenure Act said that all teachers—tenured and untenured—rated in the three highest categories based on evaluations who were dismissed because of abolition of a position must be placed on a list for reemployment.[2]  *Id.* at 658.  And because of these differences in language between the 2012 Tenure Act and the 2014 Tenure Act, the Sixth Circuit opined that "[i]t is at least arguable that this provision triggers a property interest."  *Id.*

---

[2] The 2012 Tenure Act provided that only tenured teachers dismissed over a reduction in force "shall be placed on the list for reemployment."  Tenn. Code Ann. § 49-5-511(b)(3) (2012).

### 2.    *Kelley's* Application Here.

Turning to this case, Plaintiff was terminated in early March 2016.  (ECF No. 1 at PageID 3.)  Plaintiff stated a claim under 42 U.S.C. § 1983 for violating the Fourteenth Amendment due process clause.  Plaintiff claims that Defendant deprived her of her constitutionally protected property interest in continued employment when it violated the Tenure Act by failing to place her on a list for reemployment upon excess from her position after SCS lost funding for its Adult Education Program.  (*See* ECF No. 1.)

Not every deviation from state statute, however, creates a constitutional violation. "State-created procedural rights do not, in themselves, create rights protected by the Due Process Clause of the Fourteenth Amendment, even when the procedure governs situations that explicitly implicate a protected liberty or property interest. . . ."  *Kelley v. Shelby County Bd. of Educ.*, 198 F. Supp. 3d 842, 855 (W.D. Tenn. 2016) *(citing Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Swartz v. Scruton*, 964 F.2d 607, 610 (7th Cir. 1992) ("Procedural interests under state law are not themselves property rights that will be enforced in the name of the Constitution."); *Bills v. Henderson*, 631 F.3d 1287, 1299 (6th Cir. 1980) ("While such adherence is desirable, every deviation from state procedures [governing prisoner transfer hearings] cannot be viewed as a constitutional violation.")).  Plaintiff must therefore show that she held a protected property interest in continued employment to succeed on her § 1983 claim.

"A protected property interest is defined by the terms of the state document creating the interest."  *Kelley*, 751 F. App'x at 657.  Because Defendant excessed Plaintiff after July 1, 2014, the 2014 Tenure Act applies to her claim.  So Plaintiff must show that the 2014 Tenure Act

confers a constitutionally protected property interest in continued employment to those employees excessed because of a reduction in force. Citing *Kelley*, this Court has already noted that "the Defendant's failure to evaluate [Plaintiff] or place her name on the reemployment list may constitute a due process violation" under the 2014 Tenure Act. (ECF No. 88 at PageID 2631.)

As noted above, the Sixth Circuit did not decide whether the 2014 Tenure Act triggers a constitutionally protected property interest in continued employment for teachers excessed because of a reduction in force. *See Kelley*, 751 F. App'x at 658 ("[i]t is at least arguable that this provision triggers a property interest."). This Court then certified questions of state law surrounding the 2014 Tenure Act to the Supreme Court of Tennessee. (ECF No. 193.) But the Tennessee Supreme Court declined certification. (ECF No. 198.) This Court must therefore decide whether the 2014 Tenure Act confers Plaintiff a constitutionally protected property interest in continued employment.

### 3. Plaintiff Has a Constitutionally Protected Interest in Continued Employment Under the 2014 Tenure Act

To establish a prima facie due process claim, Plaintiff must establish that Defendant deprived her of a constitutionally protected property interest without adequate process. *Upshaw v. Metro. Nashville Airport Auth.*, 207 F. App'x 516, 518 (6th Cir. 2006). "A protected property interest is defined by the terms of the state document creating the interest." *Kelley*, 751 F. App'x at 657. An individual claiming to have a protected property interest in his position "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A legitimate claim of entitlement "must be grounded in some statute, rule, or policy." *Hughlett v. Romer-Sensky*, 497 F.3d 577, 567 (6th Cir. 2006). Ultimately, to establish a constitutionally protected property interest in their

position, a public employee must show "a legitimate expectation of continued employment." *Roth*, 408 U.S. at 577.

In Tennessee, *tenured* teachers have a constitutionally protected property interest in continued employment and the school board must afford due process before the teacher is terminated. *Kelley*, 198 F. Supp. 3d at 854 (citing *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 627 (Tenn. 2012)), *aff'd,* 2018 WL 4628625 (6th Cir. Sept. 26, 2018). But the Due Process Clause does not prevent a reduction in force where a property right in continued employment is created by state law and state law allows the position to be eliminated because of a legitimate reduction in force. *Id.* (citing *Upshaw*, 207 F. App'x at 519); *see also, Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 769 (6th Cir. 2004) (holding that a government employee has no constitutional right to continued employment when the government eliminates her position and that termination is not based on cause).

This Court has already held that due process does not prevent the Board from excising a teaching position when it eliminates the position as a result of a reduction in force, because the statute that creates the property interest specifically provides for such a reduction. (ECF No. 88 at 2629; *see also* Tenn. Code Ann. § 49-5-511(b).) And this Court has already held that SCS eliminated Plaintiff's position because of a legitimate reduction in force after it lost state funding for the Adult Education Program. (*Id.*) But the inquiry does not end there. The Court also has to determine whether the 2014 Tenure Act creates a protectable property interest in the process afforded to a teacher excessed as part of a legitimate reduction in force.

The key distinguishing feature between the 2012 Tenure Act and the 2014 Tenure Act, according to the Sixth Circuit, was the emphasis on individualized merit evaluations. *See supra* 7–10; *Kelley*, 751 F. App'x at 658. Because the 2012 Tenure Act did not include individualized

merit evaluations, a teacher had no protected property interest in continued employment when terminated because of a reduction in force. *Id.* By contrast, the 2014 Tenure Act includes individualized merit evaluations for teachers excessed because of reductions in force "based on their level of effectiveness determined by evaluation . . . ." Tenn. Code Ann. § 49-5-511(b)(1) (2014). And that same section says that an excised teacher rated in the three highest categories in those evaluations must be placed on a list for reemployment. *Id.* at § 49-5-511(b)(3) (2014). So, a teacher who rates a three, four, or five out of five has a reasonable expectation that, if the school board excessed them as a result of a legitimate reduction in force, it would then place their name on a reemployment list under Tennessee Code Annotated § 49-5-511(b)(3) (2014). This is the exact type of legitimate expectation of continued employment sufficient to create a constitutionally protected property interest under the Due Process Clause.

This Court therefore holds that teachers rated in the three highest categories based on applicable evaluations hold a "property interest or reasonable expectation that they would not be excessed based on their individual merits, qualities, circumstances, or performance." *Cf. Kelley*, 751 F. App'x at 658 (holding that a teacher does not hold the same reasonable expectation where the 2012 Tenure Act provides for no individualized merits analysis). Instead, those teachers have a reasonable expectation that the school board will place their name on the reemployment list under Tennessee Code Annotated § 49-5-511(b)(3) (2014). This does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—in any position she applies for after her position is terminated. But Defendant is required, at bottom, to place her name on the reemployment list. Tenn. Code Ann. § 49-5-511(b)(3) (2014).

As explained above, however, Plaintiff does not inherently retain a protected property interest in continued employment only because she is tenured. *Kelley*, 198 F. Supp. 3d at 854.

Plaintiff must also establish that she qualifies as rated in one of the three highest categories based on evaluations before triggering her protected property interest under Tennessee Code Annotated § 49-5-511.  And Plaintiff has done so here.  There is no dispute that Defendant rated Plaintiff a five out of five in her applicable evaluations.  (ECF No. 47 at PageID 325–30.)  And so Plaintiff had a reasonable expectation that Defendant would place her name on a reemployment list after termination of the Adult Education Program.

But finding that Plaintiff had a protected property interest in continued employment based on her evaluation scores does not, alone, mean that this Court should revive her § 1983 claim.  Plaintiff must also show that Defendant deprived her of due process.  And in that event, Plaintiff must show a dispute of material fact about whether Defendant placed her on the reemployment list.  The Court will address that question next.

### B.   Newly Available Evidence Creates a Dispute of Material Fact about whether Defendant Placed Plaintiff's Name on the Reemployment List

This Court granted summary judgment on Plaintiff's Due Process claim.  (ECF No. 88.)  Plaintiff argued that Defendant violated her Due Process rights by failing to evaluate her performance or place her name on a reemployment list as required by the Tenure Act.  (ECF No. 46 at PageID 278.)  The Court has already noted that "[t]he Defendant's failure to evaluate [Plaintiff] or place her name on the reemployment list may constitute a due process violation." (*Id.* (citing *Kelley v. Shelby Cty. Bd. of Educ.*, Nos. 17-6070/17-6146/17-6152, 2018 WL 4628625, at *5 (6th Cir. Sept. 26, 2018) ("It is at least arguable that [Tenn. Code Ann. § 49-5-511(b)(3)] triggers a property interest.").)  But when this Court's entered its previous order, Plaintiff introduced no evidence that SCS failed to place her name on the reemployment list. (ECF No. 88 at PageID 2631.)  And because Plaintiff failed to meet her burden to establish that fact, the Court granted summary judgment for Defendant.  (*See* ECF No. 88.)

In its holding, the Court noted Plaintiff "may not support her burden by espousing mere metaphysical doubts or subjective beliefs." (ECF No. 88 at PageID 2632.) Plaintiff previously argued that Chantay Branch, Director of Employee Relations, testified that she was unaware if Plaintiff was on the list. (*Id.*) The Court held that this testimony, by itself, does not establish by a preponderance of the evidence that Defendant failed to place Plaintiff on the list. (*Id.*)

### 1.    New Evidence

Plaintiff now argues that new evidence justifies reconsideration of the previous order and reversal of this Court's grant of summary judgment. After entry of the summary judgment order, counsel for Defendant informed the Court that the SCS Board voted on October 30, 2018, to ratify Plaintiff's termination and it then placed her name on the reemployment list. (ECF No. 164-1 at PageID 4762.) And then the Court allowed more discovery. Defendant's designee under Federal Rule of Civil Procedure 30(b)(6), Eddie Jones, testified that Defendant did not place Plaintiff's name on the reemployment list after all. (*Id.* at PageID 4765.) Plaintiff now contends that this revelation is new evidence justifying reconsideration of the previous ruling. (ECF No. 164-1 at PageID 4760.) According to Plaintiff, she now has evidence showing that Defendant still has not placed her name on a reemployment list as required by Tenn. Code Ann. § 49-5-511(b)(3). (ECF No. 164-1 at PageID 4762.) Defendant counters that this new evidence does not justify reconsideration because it did, in fact, place her name on the reemployment list. (ECF No. 170 at PageID 4902–03.)

### 2.    Eddie Jones' Testimony

After the Court's order, Plaintiff deposed Eddie Jones ("Jones"), SCS's Manager of Recruitment and Staffing. He testified that he placed Plaintiff's name on an Excel file which he uses to track excessed employees who have not secured permanent positions. (ECF No. 153 at

PageID 4197.)  Defendant alleges this meets the requirement for the reemployment list, (ECF No. 170 at PageID 4902), but Plaintiff insists that Mr. Jones' Excel file is not enough for Tenn. Code Ann. § 49-5-511(b)(3) (ECF No 164-1 at PageID 4766).

Jones testified that the Excel file on which he tracks excessed employees is "not a reemployment list per se."  (ECF No 153 at PageID 4197.)  He elaborated "[i]t is just a list of names of individuals that I wanted to track . . . [to] help find a permanent position" and that the Excel file was just "[his] personal list within [the] department that keeps up with all of the individual[s]."  (*Id.* at PageID 4198–99.)

Jones then later testified that the official reemployment list was once in a cloud-based software suite named Zoho.  (*Id.* at PageID 4197, 4200.)  Jones pulled archives to determine whether Defendant ever placed Plaintiff's name on the Zoho list.  (*Id.* at PageID 4197.)  But that search was inconclusive.  (*Id.*)  Jones also testified there had not been many updates to the Zoho list because (1) use of Zoho was being phased out, and (2) there had been so few reductions in force.  (*Id.* at PageID 4197, 4200.)  So, according to Mr. Jones, even if the official list were located on Zoho, it is more likely than not that Plaintiff's name did not appear on it because Defendant had not been updating it.  (*Id.* at PageID 4200.)  Jones suggested that any reemployment list would be on Excel, but that Defendant was migrating it to another software, SharePoint.  (*Id.*)

Given Mr. Jones' new testimony and the confusion surrounding whether his Excel document is the reemployment list or whether the reemployment list was on Zoho, the Court finds that this testimony shows a disputed material fact about whether Defendant ever placed Plaintiff's name on the reemployment list.  At one point in his testimony, Jones made clear that the Excel document was for his own personal use (ECF No. 153 at PageID 4198–99), and at

another, he says that the reemployment list was that same Excel document on which he placed Plaintiff's name (*id.* at PageID 4200). Jones's testimony has muddied the waters. This Court cannot say that a trier of fact could not find that Defendant failed to place Plaintiff's name on the reemployment list under Tenn. Code Ann. § 49-5-511(b)(3).

Having found that the 2014 Tenure Act provides Plaintiff with a constitutionally protected interest in continued employment, and because the Court finds there is a dispute over whether Defendant ever placed Plaintiff's name on the reemployment list, the Court finds it should reconsider its order granting summary judgment for Defendant on her 42 U.S.C. § 1983 claim. The Court therefore **GRANTS** Plaintiff's motion for revision of the Order granting summary judgment as to her Fourteenth Amendment Due Process claim under 42 U.S.C. § 1983. (ECF No. 164.)

The Court notes, however, that it construes Plaintiff's § 1983 claim narrowly—applying only to Plaintiff's contention that Defendant deprived her of her property interest in continued employment by failing to evaluate her properly or place her name on the reemployment list. Plaintiff's claim as to the manner of her termination remains separate from this claim and falls under her Tenure Act claim,[3] Tennessee Code Annotated § 49-5-511(b).

## II.   Plaintiff's Motion for Revision as to her Remaining Claims

Nearly fifteen months after this Court entered its order granting in part and denying in part summary judgment as to Plaintiff's claims, Plaintiff moved again for revision asking the Court to reconsider its rulings on her remaining claims. (*See* ECF No. 206.) Plaintiff's arguments for reconsideration can be split into two categories: (1) claims upon which the Court

---

[3] Plaintiff's Tenure Act claim has never been dismissed. (*See* ECF No. 88.)

should have denied summary judgment for Defendant, and (2) claims upon which the Court should have granted summary judgment in Plaintiff's favor.[4]

The Court will address these arguments in turn.

### A.      Plaintiff's Argument to Revive Her Once Dismissed Claims

Plaintiff argues that the Court should revise its prior ruling and revive her other claims it had dismissed.  Plaintiff asks the Court to revive:  (1) her 42 U.S.C. § 1983 claim under the Fourteenth Amendment due process clause[5]; (2) her Title VII retaliatory discharge claim; (3) her First Amendment claim; and (4) her Tennessee Public Protection Act claim.  (ECF No. 206-2.) Defendant argues that Plaintiff has no right to revision of the previous order because she cannot meet the standard for reconsideration under L.R. 7.3(b).  (ECF No. 211 at PageID 5980–84.) Defendant contends that Plaintiff is just seeking to relitigate issues this Court already decided. (*Id.*)

Defendant has a point.  Plaintiff has articulated no basis for revising the Court's previous order.  Plaintiff states no newly discovered evidence justifying a change to this Court's analysis. (*See* ECF No. 206-2.)

Plaintiff also argues that the Court should revisit all of her claims because of the Tennessee Supreme Court's decision to decline certification of the questions submitted by this Court.  (ECF No. 206-2 at PageID 5460.)  But that decision is not "new law" for Plaintiff's motion for revision.  The Tennessee Supreme Court's decision to decline to answer these

---

[4] This category of claims overlaps with the previous—Plaintiff's second motion for revision asks the Court to grant her summary judgment on *all* of her claims.  (*See* ECF No. 206-2.)

[5] The Court has already revived this claim after analysis under Plaintiff's previous motion for reconsideration.  *See supra* p. 12–13.  Plaintiff's request for reconsideration of that same claim in her second motion for revision is therefore moot.

questions does not change the law under the Tennessee Teacher Tenure Act.  In fact, that court's decision leaves this Court in the same place it was—and with the same legal precedent—when it rendered it's December 18, 2018 order.

The bulk of Plaintiff's argument, instead, is that this Court should revise its order because of "a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order."  (*See* ECF No. 206-2 (citing L.R. 7.3(b)).)  The "manifest injustice" standard is exceedingly narrow:

> "'[M]anifest injustice' . . . [is] . . . defined as '[a]n error in the trial court that is direct, obvious, and observable[,]'" *Tennessee Protection & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004), "apparent to the point of being indisputable," *Block v. Meharry Med. Coll.*, No. 3:15-cv-00204, 2017 WL 1364717, at *1 (M.D. Tenn. Apr. 14, 2017) (citation omitted).  "[F]or a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." *Block*, 2017 WL 1366717, at *1 (citation omitted).  The Sixth Circuit has also advised that "manifest injustice" is not meant to allow a disappointed litigant to "correct what has—in hindsight—turned out to be a poor strategic decision . . . ." *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

*Ashraft v. Adventist Health Sys./Sun-belt, Inc.*, No. 2:17-cv-02839-SHM-dkv, 2018 WL 4431381, at *3 (W.D. Tenn. 2018).

All of Plaintiff's arguments for revision of the interlocutory order are restatements of her former counsel's previous arguments in response to Defendant's motion for summary judgment. Plaintiff simply challenges the result of this Court's December 18, 2018 order because she is disappointed with the outcome.  These arguments appeared both in Plaintiff's response in opposition (with supporting documents) to Defendant's motion for summary judgment (ECF Nos. 46, 46-1, 46-2, 76), and in her first motion for revision of the interlocutory order (ECF No. 164).  The Court scrutinized these arguments at the time of making its decision granting in part and denying in part Defendant's motion for summary judgment.  (*See* ECF No. 88.)

"Rearguing a case on the merits or rearguing issues already presented is insufficient grounds for granting a motion to reconsider . . . ." *Ashraft*, 2018 WL 4431381, at 3.  *See also*, *In re Southeastern Milk Antitrust Litig.*, No. 2:07-cv-208, 2011 WL 3793777 (E.D. Tenn. Aug. 25, 2011) (quoting *White v. Hitachi*, No. 3:04-cv-20, 2008 WL 782565 (E.D. Tenn. March 20, 2008) ("Although a court can grant motions to revise its prior rulings, it 'should not do so in the vast majority of instances, especially where such motions restyle or rehash the initial issues.'")). Plaintiff's disagreement with the Court's order here does not rise to the level of manifest injustice.  The Court thus **DENIES** Plaintiff's motion to revise these claims:  (1) 42 U.S.C. § 1983 claim under the Fourteenth Amendment due process clause; (2) Title VII retaliatory discharge claim; (3) First Amendment claim; or (4) Tennessee Public Protection Act claim.

Plaintiff also argues that, after reviving her once dismissed claims, the Court should affirmatively grant summary judgment in Plaintiff's favor.  (*See* ECF No. 206-2 at PageID 5477.)  But because the Court will not reconsider its earlier ruling as to these claims, the Court also finds it unnecessary to address Plaintiff's argument for summary judgment in her favor as to those claims already dismissed.  But in the next section, the Court will address her request for summary judgment on issues still pending.

### B.   Plaintiff's Argument for Summary Judgment in Her Favor

Plaintiff's second motion for revision requests that the Court reconsider its prior ruling and instead "grant summary judgment as a matter of law on all of [her] claims."  (ECF No. 206-2 at PageID 5477.)  Having already denied Plaintiff's motion to revive her dismissed claims, the request for summary judgment in Plaintiff's favor on those same claims is moot.  The Court will therefore only address Plaintiff's argument for affirmative summary judgment on the claims which the Court has not already dismissed:  (1) Plaintiff's claim under the Tennessee Teacher

Tenure Act; (2) Plaintiff's claim for retaliation related to harassment, referrals to Labor Relations, the written reprimand, and the negative job evaluations. (*See* ECF No. 206-2.)

Defendant argues that the Court should deny Plaintiff's motion because she had a chance to raise these arguments in response to Defendant's motion for summary judgment and in her first motion for revision. (ECF No. 211 at PageID 5979–80.) And Defendant argues that Plaintiff is improperly using her second motion for revision as a work around to obtain summary judgment in her favor even though she failed to file her own motion for summary judgment before the deadline set forth in the scheduling order. (ECF No. 211 at PageID 5979–80.)

Defendant is correct. This is too little too late. Plaintiff could have raised these same arguments for reconsideration long before her second motion for revision. This motion raises no newly discovered facts, no intervening change in law, and relies solely on already existing facts and law to relitigate old issues. (*See* ECF No. 206.) Simply put, Plaintiff may not relitigate old matters or raise arguments or present evidence which she could have raised before the entry of the order at issue. *See In re Regions Morgan Keegan Secs., Derivative, and ERISA Litig.*, No. 07-2784, 2010 WL 5464792, at *1 (W.D. Tenn. Dec. 30, 2010) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). But that is precisely what Plaintiff tries to do here.

What is more, Plaintiff tries to make an end-run around the scheduling order's deadlines to move for summary judgment long after that deadline has passed. The Court's amended scheduling order set the deadline for dispositive motions to be filed over two years ago. (ECF No. 39.) Defendant complied with this deadline, moving for summary judgment on all Plaintiff's claims in 2018. Plaintiff responded to that motion for summary judgment (ECF No.

46), but never moved for judgment on her own claims.  Nor did Plaintiff request an extension of time in which to do so.

Now, two years after the summary judgment deadline, Plaintiff wishes to obtain summary judgment in her favor on all of her claims.  But the Court will not entertain her motion for revision because it seeks to circumvent the long-passed scheduling order deadlines.  Any motion for summary judgment filed at this point is untimely.  The Court therefore **DENIES** Plaintiff's motion for revision and her request for summary judgment on (1) Plaintiff's claim under the Tennessee Teacher Tenure Act; (2) Plaintiff's claim for retaliation related to harassment, referrals to Labor Relations, the written reprimand, and the negative job evaluations.

## III.   Defendant's Request for Reasonable Attorneys' Fees Incurred by Responding to Plaintiff's Second Motion for Revision

Defendant asks the Court to award it reasonable attorneys' fees for the expenses incurred in responding to Plaintiff's second motion for revision of the same interlocutory order.  Local Rule 7.3(c) provides:

> No motion for revision may repeat any oral or written argument made by the movant in support of or in opposition to the interlocutory order that the party seeks to have revised.  Any party or counsel who violates this restriction shall be subject to appropriate sanctions, including, but not limited to, striking the filing.

W.D. Tenn. R. 7.3(c).  Defendant argues that Plaintiff's second motion for revision (ECF No. 164), simply repackages arguments made before to the Court in her response to the motion for summary judgment and in the first motion for revision.  (ECF No. 211 at PageID 5984.)  Even though Local Rule 7.3(c) does not explicitly provide for attorney's fees, a district court has the inherent power to assess attorney's fees sometimes.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *First Bank of Marietta and Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510–16 (6th Cir. 2002).

Here, although Plaintiff did not identify a valid ground for revision under Local Rule 7.3(b) and even though she merely repeats arguments made in her response to Defendant's motion for summary judgment and her first motion for revision, the Court finds that attorney's fees are inappropriate here.  Plaintiff is now proceeding pro se.  (ECF Nos. 171 & 172.)  In general, Courts hold pro se litigants to "less stringent standards" than attorneys in handling aspects of their case which require "some degree of legal training."  *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Court finds that Plaintiff did not violate Local Rule 7.3(c) intentionally or in bad faith.  *See Tyler v. Taco Bell Corp.*, 2:15-cv-02084-JPM-cgc, 2016 WL 3162145, at *5 (W.D. Tenn. June 3, 2016) (finding attorney's fees inappropriate under Local Rule 7.3(c) where it does not appear that Plaintiff violated the Rule intentionally or in bad faith).  And "Local Rule 7.3(c) does not contemplate the assessment of attorney's fees as a sanction for non-egregious noncompliance with the Rule.").  *Id.*

While Local Rule 7.3(c) provides that the anyone violating the rule "*shall* be subject to appropriate sanctions," Defendants only requested reasonable attorneys' fees.  And because the Court finds attorneys' fees and costs inappropriate, the Court **DENIES** Defendant's motion for reasonable attorney's fees related to Plaintiff's second motion for revision.  The Court notes, however, that rehashing or restyling arguments on issues the Court has already decided may cross the line into "intentional" and "bad faith" arguments, sufficient to warrant appropriate sanctions later.

## <u>CONCLUSION</u>

For all the above reasons, the Court **GRANTS** Plaintiff's motion for revision of an interlocutory order as to her claim under 42 U.S.C. § 1983 (ECF No. 164), and **DENIES**

22

Plaintiff's motion for revision of an interlocutory order as to the remainder of her claims (ECF No. 206). And the Court **DENIES** Defendant's motion for reasonable attorneys' fees incurred in responding to Plaintiff's second motion for revision of the same order. (ECF No. 211 at PageID 5984.)

  **SO ORDERED**, this 7th day of July, 2020.

        s/Thomas L. Parker
        THOMAS L. PARKER
        UNITED STATES DISTRICT JUDGE