**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| SONYA P. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:17-cv-02050-TLP-jay |
| v. ) | |
| ) | JURY DEMAND |
| SHELBY COUNTY BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON PLAINTIFF'S TEACHER TENURE ACT CLAIM**

Defendant Shelby County Board of Education (the "Board") moves the Court for a determination of the type of damages Plaintiff is entitled to under her Teacher Tenure Act claim, Tennessee Code Annotated § 49-5-511(b). (ECF No. 122.) In particular, Defendant argues that Plaintiff's damages are limited to back pay and that reinstatement is not warranted here. (*Id.* at PageID 3292.) The School Board's October 2018 Resolution which purportedly brought Plaintiff's excision into compliance with § 49-5-511(b)(1), prompted Defendant's motion. (*See* ECF No. 122-3.)

Because of this new development, the Court granted Plaintiff time and space to conduct limited discovery about the Board's adherence to the requirements of the Teacher Tenure Act. (*See* ECF No. 116.) Plaintiff conducted supplemental discovery and has now responded to Defendant's motion. (ECF No. 150.) For the reasons below, the Court finds that Plaintiff's damages are limited to back pay as Defendant's excision now complies with the Teacher Tenure Act.

## BACKGROUND

This is another case in which the Shelby County School System's ("SCS") violated the Tennessee Teacher Tenure Act's reduction in force ("RIF") provision, Tennessee Code Annotated § 49-5-511(b).[1] In March 2016, Plaintiff was terminated from her position as an Adult Education Advisor at the Messick Adult Education Center, part of the Adult Education Program of the SCS. (ECF No. 1 at PageID 6.) When the State of Tennessee pulled the grant funding the program, SCS closed the Messick Adult Education Center and excised Plaintiff. (ECF No. 46 at PageID 313.) Plaintiff received a letter of termination from SCS Superintendent Dorsey Hopson at that time. (ECF No. 49 at PageID 847.) Yet the Board took no action on Plaintiff's termination in 2016.

The closing of the Messick Adult Center and Plaintiff's termination followed a tumultuous period in SCS's history. When the Memphis City School System merged with SCS in 2013, a mass student exodus prompted SCS to reduce the number of teaching positions district wide. *See Kelley v. Shelby Cty. Bd. of Educ.*, 751 F. App'x 650, 652 (6th Cir. 2018). This prompted many lawsuits over the procedures used by SCS to terminate teachers under the RIF policy. *See e.g.*, *Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842 (W.D. Tenn. 2016); *Haynes v. Shelby Cty. Bd. of Educ.*, No. 17-cv-2305-SHL-cgc, 2018 WL 1558284 (W.D. Tenn. Jan. 30, 2018).

---

[1] SCS's approach to excising teachers when it becomes necessary to reduce the number of positions within the system has led to many lawsuits. *See, e.g.*, *Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842 (W.D. Tenn. 2016); *Haynes v. Shelby Cty. Bd. of Educ.*, No. 17-cv-2305-SHL-cgc, 2018 WL 1558284 (W.D. Tenn. Jan. 30, 2018). This case, like those, evidences the Board's failure to adhere to its statutory duty to ensure that each teacher excised as part of a reduction in force policy receives the protections afforded under the Act.

In *Kelley*, the trial court found that the school system's procedures violated the Teacher Tenure Act's RIF provision because the Board had taken no action about the layoffs other than authorizing the overall reduction in force. *See* 198 F. Supp. 3d at 851–52. In response to the district court's decision, the Board passed a resolution on October 5, 2016 (the "October 2016 Resolution"), ostensibly ratifying the terminations during the 2013–2014, 2014–2015, and 2015–2016 school years. (*See* ECF No. 122 at PageID 3293.) The October 2016 Resolution included a list of named employees whose excision the Board was ratifying.[2] (ECF No. 122-1.) The district court in *Kelley*, after reconsideration of the damages due, determined that the Board's resolution had brought the excisions into compliance with the Teacher Tenure Act. *See* 751 F. App'x at 653–54. And so it capped the plaintiff's damages on the date of the resolution. *Id.*

The Sixth Circuit affirmed the trial court's decision to cap damages as of the date of the Board Resolution. *See* 751 F. App'x at 656. That decision prompted the Board to pass yet another resolution on October 30, 2018 (the "October 2018 Resolution"), in an apparent effort to ratify the termination of certain excessed employees whose names it had omitted (like Plaintiff's) from the October 2016 Resolution. (ECF No. 122-3.) The Board passed the October 2018 Resolution shortly before the trial of this case. This later resolution is important because the Board listed Plaintiff's name. (*Id.* at PageID 3328.)

Defendant's attorney heard about the October 2018 Resolution on January 8, 2019—one week before the pretrial conference scheduled here. (*See* ECF No. 122 at PageID 3295.) Plaintiff's counsel did not find out about it until January 10, 2019. (*Id.*) Defendant's attorney

---

[2] The Board failed to include Plaintiff, Dr. Sonya Williams' name in that October 2016 Resolution. (ECF No. 122-1.)

argued at the pretrial conference that Plaintiff's remedy under the Teacher Tenure Act was now definitively limited to back pay because the Board ratified Plaintiff's termination. As a result, according to Defendant's counsel, only a question of law remains—the damages to which Plaintiff is now entitled. (*Id.* at PageID 3300.) According to Defendants, because the Board *intended* to ratify Plaintiff's excision in October 2016, the October 2018 ratification now retroactively caps her damages. (ECF No. 122 at PageID 3294.) Plaintiff's counsel objected. And so the Court allowed the parties to engage in limited, supplemental discovery and to submit briefs on the issue. (*See* ECF Nos. 122 & 150.)[3] The Court will now address these issues.

## LEGAL STANDARD

### I.   Tennessee Teacher Tenure Act Requirements

Under the Teacher Tenure Act school boards may reduce the number of teaching positions and nonlicensed positions in the system when necessary because of a decrease in enrollment or for other good reason. Tenn. Code Ann. § 49-5-511(b)(1). The statute grants the board of education of each school system the authority "to dismiss such teachers or nonlicensed employees based on their level of effectiveness" as determined by Tennessee law. *Id.* The school board cannot delegate its authority to terminate a teacher as part of a RIF policy. *Kelley*, 751 F. App'x at 655. That said, the school board may delegate the authority to perform each individual employee's evaluation. *Id.* The school board itself must, however, "approve the evaluation process and guidelines, mak[e] the ultimate employment decisions, and provid[e] notice of termination to the laid-off teachers." *Id.*

---

[3] In the meantime, this Court closed the case temporarily to certify questions of state law for the Tennessee Supreme Court to answer. (ECF Nos. 193 and 194.) In March 2020, the Tennessee Supreme Court chose not to certify those questions. (ECF No. 198.) So this Court reopened the case and is now ready to proceed. (ECF No. 204.)

After a teacher's termination as part of a RIF process, the statute mandates that teachers "rated in the three (3) highest categories based on evaluations . . . shall be placed on a list for reemployment." Tenn. Code Ann. § 49-5-511(b)(3). The teacher has a right to remain on the reemployment list until they accept an "offer of reemployment for a comparable position within the local education association" or "rejects four bona fide offers of reemployment for comparable positions within the [local education association]." Tenn. Code Ann. § 49-5-511(b)(4).

## II.   Statutory Analysis – Questions of Fact Versus Questions of Law

"Statutory interpretation is a question of law . . . ." *United States v. Cassidy*, 899 F.2d 543, 545 (6th Cir. 1990) (quoting *In re Vause*, 886 F.2d 794, 798 (6th Cir. 1989)). Statutory compliance, on the other hand, is a mixed question of law and fact. *See Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (holding that determining whether the defendants were deliberately indifferent was a mixed question of law and fact). Courts consider issues over the acts performed by the parties "subsidiary or basic fact[s]." *Id.* Whether these alleged facts show a violation of a statute is then a question of law. *See Williams*, 186 F.3d at 690 (holding that it was a question of law whether the defendants' actions violated the law).

## **ANALYSIS**

The parties disagree about whether Defendant excised Plaintiff according to the Teacher Tenure Act, Tennessee Code Annotated § 49-5-511(b)(1). These disputes include (1) whether the October 2016 Resolution applies to Plaintiff; (2) whether the October 2018 Resolution complies with state law; (3) whether income Plaintiff earned outside SCS reduces her potential back pay damages; and (4) whether the Court should cap damages when the Board acts on

Plaintiff's excision or when the SCS notifies Plaintiff notice of her termination.  (*See* ECF Nos. 122 & 150.)

To begin with, the parties' disputes turn on applying the facts to the law.  The disagreements are not about the basic facts of Plaintiff's excision and the Board's actions.  As a result, whether Defendant excised Plaintiff in accordance with the Teacher Tenure Act is a question of law.  And the Court may rule on this issue.

## I.     The Board Violated the Teacher Tenure Act

To start, the Board violated the Teacher Tenure Act when it excised Plaintiff without the Board making the final determination.  The Board violated the Act's non-delegation principle because the superintendent made the final determination and not the Board.  *See Kelley*, 751 F. App'x at 654–55.  Even so, the fact that the Board once violated the statute does not forever preclude it from complying with the Act by making the final determination on Plaintiff's termination.  By its resolution in October 2018, the SCS Board took action on Plaintiff's termination in compliance with the Teacher Tenure Act.  *Id.* at 656 (By ratifying the illegal excision, "the Board was in effect taking ultimate responsibility for the excessing decisions, bringing the previously unlawful terminations into compliance with Tennessee law.")

That said, Defendant's assertion that the Court cannot find that the Board violated the statute is illogical.  (*See* ECF No. 122 at PageID 3296 n.4.)  And Defendant's argument that Plaintiff is entitled to no damages because the ratification of her excision relates back to the date it notified her of the termination, invalidating Plaintiff's claim for *any* damages, is likewise mistaken.  Because the Board may now be following the law does not erase everything that happened before.  *Kelley*, 751 F. App'x at 656.  ("The Board's post hoc resolution . . . cannot

cure the harm caused by the improper layoff[] . . . ."). To hold otherwise would greatly prejudice Plaintiff and give no substance to the statute.

So now the Court will address the measure of damages Defendant owes Plaintiff.

## II.     Damages Owed to Plaintiff

The reduction in force provision of the Teacher Tenure Act, § 49-5-511(b) does not itself provide a remedy for a violation of its provisions. That said, courts have applied the remedy provided in § 49-5-511(a)(3)—back pay and reinstatement—to violations of the reduction in force provision. *See Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842, 855 (W.D. Tenn. 2016) (finding that the remedy for a violation of Tenn. Code Ann. § 49-5-511(b) is the same as the one for § 49-5-511(a)(3)); *Lee v. Franklin Cty. Spec. Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 337 (Tenn. Ct. App. 2007) (same); *Randall v. Hankins*, 675 S.W.2d 712, 714 (Tenn. Ct. App. 1984) (same).

Defendant argues that Plaintiff's sole remedy is back pay for the time between her excision and when the Board ratified her excision.[4] (ECF No. 122 at PageID 3292.) Plaintiff, on the other hand, insists that she has a right to full back pay with prejudgment interest, reinstatement to a comparable position, and restoration of her service credits for tenure purposes. (ECF No. 150 at PageID 3655.)

Plaintiff's position here goes too far. Plaintiff has no right to reinstatement because, by ratifying her excision and bringing it into compliance with the Teacher Tenure Act, "the Board effectively foreclosed this avenue of relief." *See Kelley v. Shelby Cty. Bd. of Educ.*, Nos. 14-cv-2632-SHL-cgc & 14-cv-2633-SHL-cgc, 2017 WL 11139931, at *6 (W.D. Tenn. Aug. 24,

---

[4] The parties also dispute whether the Board properly ratified Plaintiff's excision by the October 2016 Resolution *or* the October 2018 Resolution. The Court addresses that dispute below. *See infra* pp. 9–10.

2017). Similarly, Plaintiff has no right to restoration of her service credits for tenure purposes because, "under the plain language of the statute, [a plaintiff] is not entitled to recover for career ladder benefits, vacation days, sick days, retirement contribution, or social security contribution." *Munford v. Bd. of Educ. of City of Memphis*, 173 S.W.3d 452, 457 (Tenn. Ct. App. 2004).

On that basis, the Court finds that Plaintiff has a right to back pay for the time between her termination and the ratification of her excision. The Court now turns to the parties' arguments about when the Board ratified the termination and other limitations on damages.

### III. Limitations on Plaintiff's Back Pay Damages

#### A. Plaintiff's argument that the Board Resolution in October 2018 does not apply

Plaintiff argues that the October 2018 Resolution does not apply to her because Defendant is still not following the Teacher Tenure Act. (ECF No. 150 at PageID 3651.) Plaintiff alleges that, by failing to transfer her to a comparable position because she had the highest level of effectiveness on her most recent evaluation, Defendant has violated the Teacher Tenure Act. (*Id.*) And so, Plaintiff argues, her damages are continuing. (*Id.*)

Plaintiff is right that the Tenure Act requires that a reduction in force be based on a teacher's "level of effectiveness." Tenn. Code Ann. § 49-5-511(b) (2014). And no one disputes that Plaintiff's evaluation scores here were a five out of five. (ECF No. 47 at PageID 325–30.) But Defendant need not transfer Plaintiff into a similar position. Instead, the 2014 Tenure Act provides "[a] teacher rated in the three (3) highest categories based on    evaluations . . . who has been dismissed because of abolition of a position shall be placed on a list for reemployment." Tenn. Code Ann. § 49-5-511(b)(3).

The Court recently held that there was a dispute of material fact on whether Defendant in fact placed Plaintiff on the reemployment list. (*See* ECF No. 220.)  This issue will go to the jury at trial.  But that dispute applies to Plaintiff's Fourteenth Amendment claim under 42 U.S.C. § 1983.  Plaintiff's Teacher Tenure Act claim, however, relates to her excision resulting from a reduction in force and whether Superintendent Hopson terminated her in violation of the statute. (*See* ECF No. 1.)

What is more, whether Defendant placed Plaintiff on the reemployment list does not affect the calculation of her damages under the Tenure Act. *See Kelley*, 198 F. Supp. 3d 842 (capping damages at the date of the Board Resolution, rather than the date of placement on the reemployment list).  Besides, even if Defendant includes a teacher on the reemployment list, it does not guarantee a job for Plaintiff because "[a] principal may refuse to accept the placement or transfer of a teacher . . . [based on] [t]he teacher's most recent evaluations . . . ." Tenn. Code Ann. § 49-5-511(b)(3); *see also Lee v. Franklin Spec. Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 334 (Tenn. Ct. App. 2007) (holding that the previous version of the statute did not "mandate that a board of education must re-employ [a] teacher" whom it placed on the reemployment list).  For that reason, if Defendant places a teacher on the reemployment list, Defendant might never hire that teacher again for a position within SCS.  Placement on the reemployment list, therefore, does not affect the measure of Plaintiff's damages.

The Court has already found above that the Board's October 2018 Resolution brought Defendant's excision of Plaintiff into compliance with § 49-5-511(b)(1). *See supra* p. 6.  But Defendant's failure to transfer her to another position does not violate the Tenure Act.  As a result, Plaintiff's argument that her damages are continuing is unpersuasive.

### B. Applying the October 2016 Resolution as a limitation on damages

Defendant now argues that the Board properly excised Plaintiff when it passed the October 2016 Resolution.[5] (ECF No. 122 at PageID 3296.) This position is based on the district court's ruling in *Kelley*, which capped the plaintiffs' damages on the date of the October 2016 Resolution even though some plaintiffs' names did not appear on that resolution. (*Id.*) Yet there is no indication that the parties even litigated this timing issue in *Kelley*. The Court therefore finds this portion of the decision in *Kelley* to be extraneous and not critical to that court's holding. Had the district court in *Kelley* addressed the omission of a plaintiff's name from the resolution and if that date were important to the parties, in all likelihood the result there would be consistent with the holding here. The takeaway from *Kelley* is that when the Board took proper action on the excision, that Board action capped the plaintiffs' damages. But the Board did not take proper action in 2016 here and so this Court need not make that finding.

Defendant further argues that the October 2018 Board Resolution was a mere clarification of the earlier 2016 resolution. (ECF No. 122 at PageID 3294.) In particular, Defendant claims that the Board's 2018 resolution incorporated the names of those employees listed as if it had included them on its earlier 2016 Resolution. (*Id.*) This would then cap her back pay as of October 2016. This argument is based the Board's alleged intention to include Plaintiff's name on the excised employees listed on the October 2016 Resolution. But Defendant fails to add legal support for this position. Defendant instead seems to argue that the October 2016 Resolution is effective because it says so.

---

[5] At one time, Defendant asserted that the Court could not find that it violated the Teacher Tenure Act when it terminated Plaintiff.

10

There is no dispute that Plaintiff's name does not appear on the October 2016 Resolution. (*See* ECF No. 122-1.) The Court thus finds that the October 2016 Resolution by itself does not cap Plaintiff's damages. The Board alone has the authority to authorize a teacher's dismissal under the excision provisions of the Teacher Tenure Act. *See* Tenn. Code Ann. § 49-5-511(b)(1); *Kelley*, 751 F. App'x at 655. The Board omitted Plaintiff's name from the October 2016 Resolution. And so the Board did not act on her excision then. The Board therefore did not comply with the Teacher Tenure Act as of that date.

### C. The October 2018 Resolution does not retroactively cap Plaintiff's damages under the October 2016 Resolution

In a slightly different argument than Section B above, Defendant argues that this Court should cap Plaintiff's damages as of October 2016 because the Board *intended* to include her name on that Resolution but mistakenly left it off. (ECF No. 122 at PageID 3294.) And so the October 2018 Resolution should then operate to reach back in time and cure that omission from two years before. *Id.* In response, Plaintiff argues that this Court should not cap her damages based on the October 2016 Resolution because Defendant did not include her name then. (ECF No. 150 at PageID 3648–49.) She further argues that the October 2018 Resolution had nothing to do with the resolution from 2016. *Id.*

The Court agrees with Plaintiff here. The October 2018 Resolution, seeking to incorporate new teachers' names to the 2016 Resolution by reference, does not retroactively cap Plaintiff's damages to October 2016. Defendant provides no law or convincing argument for its contention that the October 2018 Resolution should retroactively cap Plaintiff's damages. (*See* ECF No 122.) Again, Defendant's argument instead seems to be that the 2016 Resolution controls because it says so.

But Defendant's position does not hold water. At the outset, *Kelley* dictates that a plaintiff's damages are capped at the date the Board came into compliance with the Tenure Act. *Kelley*, 198 F. Supp. 3d at 842 (capping damages at the date of the Board Resolution). The Court has already found above that the Board's October 2018 Resolution brought Defendant's excision of Plaintiff into compliance with § 49-5-511(b)(1). *See supra* p. 6. Therefore, Plaintiff's damages are capped on October 30, 2018—the date of the October 2018 Resolution which bears her name.

What is more, simply because the Board may *now* be following the law does not erase everything that happened before. *See Kelley*, 751 F. App'x at 656. ("The Board's post hoc resolution . . . cannot cure the harm caused by the improper layoff[] . . . ."). The Court is unwilling to find that the Board can erase two years of harm suffered by Plaintiff merely because Defendant insists—without any proof or convincing argument—that it *intended* to excess her in 2016.

While the Court holds above that the October 2018 Resolution properly excessed Plaintiff and capped her damages at that point, the Court is unwilling to find that such action reaches back to cap her damages as of October 2016. To ignore the two years of harm suffered by Plaintiff because Defendant left her name off the October 2016 Resolution leads to an untenable result. And to hold otherwise would not only greatly prejudice Plaintiff but it would also give no effect to the Tenure Act.

For these reasons, the Court finds that Plaintiff has a right to back pay damages from her termination (March 7, 2016) through the October 2018 Resolution date (October 30, 2018).

### D. The effect of outside income on Plaintiff's damages

Defendant also contends that the Court should cap any back pay on the date that Plaintiff began *any* later full-time employment, if that date occurred before the resolution ratifying her excision. (ECF No. 122 at PageID 3295 n.2.) But Plaintiff argues that her back pay damages are only offset where she obtains alternative employment *within* SCS. (ECF No. 150 at PageID 3655–57.) And because Plaintiff has not obtained alternative employment within SCS, Plaintiff insists that there should be no offset of the damages owed to her under § 49-5-511(b). (ECF No. 150 at PageID 3655–57.)

Again, Defendant's position here is unpersuasive. The Tennessee Supreme Court has stated that § 49-5-511(a)(3) entitles a "vindicated teacher to an award of 'full salary' without offset for money the teacher earned or could have earned in other employment." *Thompson v. Memphis City Schs. Bd. of Educ.*, 395 S.W.3d 616, 629 (2012). Besides, Defendant cannot offset Plaintiff's back pay by earnings procured through alternative employment outside SCS. *Kelley*, 2017 WL 11139931 (holding that, under Tennessee Code Annotated § 49-5-511(a)(3), "each Plaintiff is entitled to full back pay without offset for the period of time beginning on July 1, 2014, to the earlier of the date of the Board Resolution or the date that a particular Plaintiff procured alternative employment *within the school system*") (emphasis added). And the remedy provided in § 49-5-511(a)(3)—back pay and reinstatement—has been applied to violations of the reduction in force provision. *See Kelley*, 198 F. Supp. 3d at 855 (finding that the remedy for a violation of Tenn. Code Ann. § 49-5-511(b) is the same as § 49-5-511(a)(3)); *Lee*, 237 S.W.3d 337 (same); *Randall*, 675 S.W.2d at 714 (same).

The Court thus finds that Defendant is not entitled to an offset of damages owed for any earnings Plaintiff procured through alternative employment outside SCS. And because no one

13

disputes that Plaintiff has not obtained alternative employment within SCS (ECF Nos. 150 at PageID 3656; 130 at PageID 3368), the Court finds that Defendant receives no offset for money Plaintiff earned or could have earned in other employment.

## CONCLUSION

For all the reasons above, the Court finds (1) that Defendant violated the Tennessee Teacher Tenure Act, (2) that Plaintiff has a right to back pay only, (3) that her back pay calculation runs from Plaintiff's termination on March 7, 2016, through October 30, 2018,[6] and (4) Defendant cannot offset any earnings from employment outside SCS from Plaintiff's entitlement to back pay.

**SO ORDERED**, this 13th day of August, 2020.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[6] The date of the October 2018 Resolution bringing Plaintiff's excision into compliance with the Teacher Tenure Act.