## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| SONYA P. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02050-TLP-cgc |
| v. | ) | |
| | ) | |
| SHELBY COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1983

Plaintiff Sonya P. Williams sued Defendant Shelby County Board of Education ("Board") for various causes of action, including a claim under 42 U.S.C. § 1983 for the deprivation of her Fourteenth Amendment right to due process. (ECF No. 1.) Having resolved all other claims, the Court conducted a bench trial on this § 1983 claim.[1] (ECF No. 304.) The parties then submitted proposed findings of fact and conclusions of law. (ECF Nos. 305 & 306.)

For these reasons, the Court finds that Plaintiff has not proven the essential elements of her claim by a preponderance of the evidence. The Court will therefore enter judgment for Defendant on this claim.

---

[1] "The Seventh Amendment guarantees a right to a jury trial on the merits of an action seeking legal relief under § 1983." *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999)); *see also Kelly Servs. v. De Steno*, 760 F. App'x 379, 384 (6th Cir. 2019). Plaintiff demanded a jury in her complaint. (ECF No. 1.) Defendant did not demand a jury in its answer. (ECF No. 11.) Under Federal Rule of Civil Procedure 38, "[a] proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). Plaintiff withdrew her jury demand at a status conference. (ECF No. 301.) And Defendant agreed to a bench trial. (ECF Nos. 301 & 302; s*ee also* ECF No. 277 at PageID 7730.)

## BACKGROUND

### I.      Factual Background and Procedural History

For a final time, the Court will summarize the factual background and complex

procedural history of this case.

#### A.      Stipulated and Established Facts

Plaintiff began working for Memphis City Schools as a family and consumer sciences

teacher in 2002.  (ECF No. 277 at PageID 7727.)  She became a tenured teacher in 2006.  (*Id.*)

In 2013, Memphis City Schools and another school system merged to create the Shelby County

Board of Education ("SCBE"), which is known as Shelby County Schools ("SCS").  (*Id.*)

Plaintiff applied for—and did not receive—two positions with SCS that year.  (*Id.*)  Plaintiff then

filed an EEOC charge against Defendant.  (*Id.*)

As part of a settlement of that claim, Defendant placed Plaintiff in its Adult Education

Program as an Adult Education Advisor at the Messick Adult Center in August 2015.  (*Id.*)  The

next month, Plaintiff complained of harassment and retaliation to Defendant and the Messick

Principal, Rochelle Griffin.  (*Id.* at PageID 7727–28.)  Unsatisfied, Plaintiff then filed another

EEOC charge against Defendant in December 2015, alleging retaliation for filing her earlier

EEOC charge.  (*Id.* at PageID 7728.)  One of Defendant's employees issued Plaintiff a written

reprimand in December 2015 and referred her to labor relations in January 2016.  (*Id.*)

In February 2016, Defendant sent Plaintiff a letter terminating her employment with

Shelby County Schools because the State of Tennessee pulled the grant funding the Adult

Education Program.  (*Id.*)  Defendant then excessed Plaintiff, terminating her employment, and

later closed the Messick Adult Center.  (ECF Nos. 88 at PageID 2618; 237 at PageID 6936.)

This lawsuit followed.

### B.      Procedural History

The procedural road here is long and winding.  At the start, Plaintiff sued the Board in

January 2017, asserting claims under 42 U.S.C. § 1983, Title VII retaliation claims, and claims

under the Tennessee law including the Tennessee Teacher Tenure Act ("Tenure Act"),

Tennessee Code Annotated § 49-5-511(b).  (ECF No. 1.)  The Court granted Defendant summary

judgment on all but two of these claims—the Tenure Act claim and her "Title VII retaliation

claims related to harassment, referrals to Labor Relations, the written reprimand, and the

negative job evaluation."[2]  (ECF No. 88 at PageID 2647.)  And as explained below, the Court

later revived the § 1983 claim for an alleged deprivation of her Fourteenth Amendment right to

due process.  (ECF No. 220 at PageID 6323.)

### i.      Tenure Act Claim

In August 2020, the Court entered an order in Plaintiff's favor on the Tenure Act claim.

(ECF No. 237.)  The Court found that Defendant violated the Tenure Act and that Plaintiff was

entitled to damages.  (*Id.* at PageID 6948.)  The Court explained:

> The closing of the Messick Adult Center and Plaintiff's termination
> followed a tumultuous period in SCS's history.  When the Memphis City School
> System merged with SCS in 2013, a mass student exodus prompted SCS to reduce
> the number of teaching positions district wide.  *See Kelley v. Shelby Cty. Bd. of
> Educ.*, 751 F. App'x 650, 652 (6th Cir. 2018).  This prompted many lawsuits over
> the procedures used by SCS to terminate teachers under the RIF policy.  *See e.g.*,
> *Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842 (W.D. Tenn. 2016); *Haynes
> v. Shelby Cty. Bd. of Educ.*, No. 17-cv-2305-SHL-cgc, 2018 WL 1558284 (W.D.
> Tenn. Jan. 30, 2018).

(*Id.* at PageID 6936.)

---

[2] In January 2022, Plaintiff waived her remaining Title VII retaliation claims, informing the
Court at the pretrial conference that she decided not to pursue these claims at trial.  (ECF No.
302.)

The Court noted that this case, like those cited in the excerpt above, "evidences the Board's failure to adhere to its statutory duty to ensure that each teacher excised as part of a reduction in force policy receives the protections afforded under the [Tenure] Act." (*Id.* at PageID 6936 n.2.)  The Court relied heavily on *Kelley*, which also dealt with Tenure Act claims against the Board.

In *Kelley*, the district court found that the Shelby County Board of Education's procedures for excising tenured teachers violated the Tenure Act's reduction in force ("RIF") provision.  198 F. Supp. 3d at 851–52.  In response to that decision, the Board passed a resolution in October 2016 ("October 2016 Resolution"), which supposedly ratified terminations during the 2013–2014, 2014–2015, and 2015–2016 school years.  (ECF No. 237 at PageID 6937.)[3]  The district court in *Kelley* later found that the October 2016 Resolution brought those excisions into compliance with the Tenure Act, and that court therefore capped the plaintiffs' damages at the date of the resolution.  *See Kelley*, 751 F. App'x at 653–54.

The Sixth Circuit affirmed the decision to cap damages as of that date.  *Id.*  And after the Sixth Circuit's decision, the Board passed another resolution in October 2018 ("October 2018 Resolution"), "in an apparent effort to ratify the termination of certain excessed employees whose names it had omitted (like Plaintiff's) from the October 2016 Resolution."  (ECF No. 237 at PageID 6937.)  The October 2018 Resolution listed Plaintiff's name.  (*Id.*; *see also* ECF No. 122-3.)

After the Board passed the October 2018 Resolution, "the Court granted Plaintiff time and space to conduct limited discovery about the Board's adherence to the requirements of the

---

[3] The October 2016 Resolution included a list of named employees—on which Plaintiff's name did not appear—whose excisions the Board was ratifying.  (*Id.*; *see also* ECF No. 122-1.)

Teacher Tenure Act." (ECF No. 237 at PageID 6935; *see also* ECF No. 116.) The Court then ruled on Plaintiff's Tenure Act claim.[4] (ECF No. 237.) The Court first described the Tenure Act's requirements:

> Under the Teacher Tenure Act school boards may reduce the number of teaching positions and nonlicensed positions in the system when necessary because of a decrease in enrollment or for other good reason. Tenn. Code Ann. § 49-5-511(b)(1). The statute grants the board of education of each school system the authority "to dismiss such teachers or nonlicensed employees based on their level of effectiveness" as determined by Tennessee law. *Id.* The school board cannot delegate its authority to terminate a teacher as part of a RIF policy. *Kelley*, 751 F. App'x at 655. That said, the school board may delegate the authority to perform each individual employee's evaluation. *Id.* The school board itself must, however, "approve the evaluation process and guidelines, mak[e] the ultimate employment decisions, and provid[e] notice of termination to the laid-off teachers." *Id.*

> After a teacher's termination as part of a RIF process, the statute mandates that teachers "rated in the three (3) highest categories based on evaluations . . . shall be placed on a list for reemployment." Tenn. Code Ann. § 49-5-511(b)(3). The teacher has a right to remain on the reemployment list until they accept an "offer of reemployment for a comparable position within the local education association" or "rejects four bona fide offers of reemployment for comparable positions within the [local education association]." Tenn. Code Ann. § 49-5-511(b)(4).

(ECF No. 237 at PageID 6938–39.)

The Court explained that Plaintiff's Tenure Act claim relates Defendant's decision to excess Plaintiff's position as part of a reduction in force, but Plaintiff's § 1983 claim relates to whether Defendant placed Plaintiff on a list for reemployment after terminating her employment. (*Id.* at PageID 6943.) At bottom, the Court determined that "the Board violated the Teacher Tenure Act when it excised Plaintiff without the Board making the final determination." (*Id.* at PageID 6940.) The Court found that "[t]he Board violated the Act's non-delegation principle

---

[4] Before ruling on Plaintiff's Tenure Act claim, the Court temporarily closed this case to certify questions of state law for the Tennessee Supreme Court to answer. (ECF Nos. 193 & 194.) The Tennessee Supreme Court chose not to certify those questions, so the Court reopened the case. (ECF Nos. 198 & 204.)

because the superintendent made the final determination and not the Board." (*Id.* (citing *Kelley*, 751 F. App'x at 654–55).)

The Court also found that "Plaintiff has a right to back pay for the time between her termination and the ratification of her excision." (*Id.* at PageID 6942.) And as in *Kelley*, the Court determined that the October 2018 Resolution, which contained Plaintiff's name, brought her termination into compliance with the Tenure Act.[5] (*Id.* at PageID 6940, 6943.) And so the Court concluded that "Plaintiff has a right to back pay damages from her termination (March 7, 2016) through the October 2018 Resolution date (October 30, 2018)." (*Id.* at PageID 6946.) Defendant then deposited $238,773.33 with the Clerk to satisfy this Court's order on the Tenure Act claim. (ECF Nos. 261 at PageID 7092; 294-1 at PageID 7908.)

> ### ii.   Plaintiff's § 1983 Claim

In December 2018, the Court granted Defendant summary judgment on the § 1983 claim. (ECF No. 88 at PageID 2632.) Plaintiff alleged that Defendant deprived her of her property

---

[5] Throughout this litigation, Plaintiff has repeatedly—and with some success—sought to rehash issues the Court has already resolved and to revisit legal questions the Court has already answered. Most recently, Plaintiff stated in her post-trial brief that "she wasn't dismissed because of or according to either provision under Tenn. Code Ann. § 49-5-511." (ECF No. 305 at PageID 8069 n.1.) But the Court's rulings on Plaintiff's Tenure Act claim foreclose this argument. (ECF No. 237 at PageID 6936.) When resolving that claim, the Court not only found in Plaintiff's favor but also determined that she was entitled to "damages for Defendant Shelby County Board of Education's violation of . . . Tennessee Code Annotated § 49-5-511(b)." (ECF No. 246 at PageID 6999.) And Defendant deposited $238,773.33 with the Clerk to satisfy this Court's order on the Tenure Act claim. (ECF No. 294-1 at PageID 7908.) Assumedly, Plaintiff is not asking the Court to reconsider whether she is entitled to those damages. What is more, as explained below, if Defendant did not dismiss Plaintiff under Tenn. Code Ann. § 49-5-511(b) "because of abolition of a position," then Plaintiff is not entitled to placement on a reemployment list. *See* Tenn. Code Ann. § 49-5-511(b)(3). The Court will presume that rather than potentially talking herself out of both claims, Plaintiff is seeking to challenge the Court's determination that the October 2018 Resolution brought her termination into compliance with the Tenure Act and therefore capped her damages on that claim. But the Court made that determination long ago, and the time to raise such a challenge has long passed. (ECF No. 237 at PageID 6948.) Plaintiff provides no basis for reconsidering any prior orders, and the Court will not do so here.

interest in continued employment without due process of law in violation of the Due Process

Clause of the Fourteenth Amendment.  (ECF No. 1 at PageID 2.)

> The Court addressed this claim in its order on the first summary judgment motion.

> > Although the State of Tennessee created a property interest in continued employment for tenured teachers, it also allows school boards to terminate those teachers when there is a reduction in "the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or *for other good reasons* . . . ."  Tenn. Code Ann. § 49-5-511(b)(1) (emphasis added).  There is no requirement that the termination be for cause when the position is eliminated for a reduction in force.  *See id.*  Nor does due process prevent the Board from excising a teaching position when the position is eliminated as a result of a reduction in force, because the statute that creates the property interest specifically provides for such a reduction.  *See Kelley*, 198 F. Supp. 3d at 854.

(ECF No. 88 at PageID 2629.)  The Court found that the loss of state funding for the AEP

program qualified as a "good reason" for the reduction in force.  (*Id.*)

> The Court also addressed Plaintiff's argument that Defendant's failure to place her in

another position showed an illegitimate reduction in force.

> > Under § 49-5-511(b), the only steps that must be taken in affording an excised teacher a new position is the administration of an evaluation and placement on the reemployment list.  *See* Tenn. Code Ann. § 49-5-511(b)(1)–(4).  But a teacher's inclusion on the reemployment list does not guarantee placement because "[a] principal may refuse to accept the placement or transfer of a teacher . . . [based on] [t]he teacher's most recent evaluations . . . ."  Tenn. Code Ann. § 49-5-511(b)(3); *see also Lee v. Franklin Spec. Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 334 (Tenn. Ct. App. 2007) (holding that the previous version of the statute did not "mandate that a board of education must re-employ [a] teacher" who was placed on the reemployment list).  So the Court does not consider Defendant's failure to offer Plaintiff another position within the school system evidence of a sham reduction in force.

(*Id.* at PageID 2630.)

> Lastly, the Court discussed Plaintiff's argument that "because SCS violated the

Tennessee Teacher Tenure Act in the way it terminated her under § 49-5-511(b)(1), it also

violated her due process rights under the Fourteenth Amendment."  (*Id.*)  The Court rejected this

argument, emphasizing that "Plaintiff has proffered no evidence that Defendant failed to place her on the reemployment list." (*Id.* at PageID 2631.) And so the Court granted Defendant summary judgment on that claim. (*Id.*)

### iii.   Motion to Reconsider

A month later, the parties informed the Court about the Board's October 2018 Resolution ratifying Plaintiff's termination. (ECF No. 237 at PageID 6937.) And as explained above, the Court then permitted limited discovery related to whether Defendant complied with the Tenure Act. As part of this discovery, Plaintiff deposed Eddie Jones, Defendant's former Manager of Recruitment and Staffing. (ECF No. 220 at PageID 6322.) And his deposition testimony led Plaintiff to move the Court to reconsider its decision to dismiss her § 1983 claim. (ECF No. 164.) The Court granted that motion and revived Plaintiff's § 1983 claim. (ECF No. 220.)

The Court first found that the Tenure Act, as amended in 2014, gave Plaintiff a constitutionally protected property interest. (*Id.* at PageID 6314.) The Court relied on *Kelley*, in which the Sixth Circuit emphasized the distinctions between the 2012 and 2014 versions of the Tenure Act. 751 F. App'x at 658. The *Kelley* court found that although the 2012 Tenure Act "in no way conditions the abolition of a position on the individual circumstances of the employee," the 2014 Tenure Act provides for individualized merit evaluations of teachers excessed for reductions in force "based on their level of effectiveness determined by evaluation." *Id.* The *Kelley* court also noted that unlike the 2012 version, the 2014 Tenure Act states that all teachers ranking in the three highest categories based on evaluations—and who were dismissed because of abolition of a position—must be placed on a list for reemployment. *Id.* The Sixth Circuit stated that "[i]t is at least arguable that this provision triggers a property interest." *Id.*

Using *Kelley* as a backdrop, this Court summarized the relevant inquiry for Plaintiff's claim under § 1983:

> This Court has already held that due process does not prevent the Board from excising a teaching position when it eliminates the position as a result of a reduction in force, because the statute that creates the property interest specifically provides for such a reduction. (ECF No. 88 at 2629; *see also* Tenn. Code Ann. § 49-5-511(b).)  And this Court has already held that SCS eliminated Plaintiff's position because of a legitimate reduction in force after it lost state funding for the Adult Education Program.  (*Id.*)  But the inquiry does not end there. The Court also has to determine whether the 2014 Tenure Act creates a protectable property interest in the process afforded to a teacher excessed as part of a legitimate reduction in force.

(ECF No. 220 at PageID 6318.)  The Court again focused on the 2014 Tenure Act's "emphasis on individualized merit evaluations." (*Id.*)  The Court then addressed the reemployment list.

> [T]he 2014 Tenure Act includes individualized merit evaluations for teachers excessed because of reductions in force "based on their level of effectiveness determined by evaluation . . . ." Tenn. Code Ann. § 49-5-511(b)(1) (2014).  And that same section says that an excised teacher rated in the three highest categories in those evaluations must be placed on a list for reemployment.  *Id.* at § 49-5-511(b)(3) (2014).  So, a teacher who rates a three, four, or five out of five has a reasonable expectation that, if the school board excessed them as a result of a legitimate reduction in force, it would then place their name on a reemployment list under Tennessee Code Annotated § 49-5-511(b)(3) (2014).  This is the exact type of legitimate expectation of continued employment sufficient to create a constitutionally protected property interest under the Due Process Clause.

> This Court therefore holds that teachers rated in the three highest categories based on applicable evaluations hold a "property interest or reasonable expectation that they would not be excessed based on their individual merits, qualities, circumstances, or performance." *Cf. Kelley*, 751 F. App'x at 658 (holding that a teacher does not hold the same reasonable expectation where the 2012 Tenure Act provides for no individualized merits analysis).  Instead, those teachers have a reasonable expectation that the school board will place their name on the reemployment list under Tennessee Code Annotated § 49-5-511(b)(3) (2014).  This does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—in any position she applies for after her position is terminated.  But Defendant is required, at bottom, to place her name on the reemployment list.  Tenn. Code Ann. § 49-5-511(b)(3) (2014).

(*Id.* at PageID 6319.)

The Court also explained that to show a constitutionally protected property interest, "Plaintiff must also establish that she qualifies as rated in one of the three highest categories based on evaluations before triggering her protected property interest under Tennessee Code Annotated § 49-5-511.  And Plaintiff has done so here." (*Id.* at PageID 6320.)  The Court emphasized that "[t]here is no dispute that Defendant rated Plaintiff a five out of five in her applicable evaluations." (*Id.* (citing ECF No. 47 at PageID 325–30).)  And so the Court concluded that "Plaintiff had a reasonable expectation that Defendant would place her name on a reemployment list after termination of the Adult Education Program." (*Id.*)  But the Court emphasized that having such a property interest "does not, alone, mean that this Court should revive her § 1983 claim," because "Plaintiff must also show that Defendant deprived her of due process." (*Id.*)

The Court then shifted to Plaintiff's new evidence, repeating that when the Court granted summary judgment to Defendant on the § 1983 claim, "Plaintiff [had] introduced no evidence that SCS failed to place her name on the reemployment list." (*Id.* (citing ECF No. 88 at PageID 2631).)  But after reviewing Eddie Jones's deposition testimony, the Court determined that Jones had "muddied the waters" surrounding the reemployment list and about whether Defendant had placed Plaintiff's name on it. (*Id.* at PageID 6323.)  As a result, the Court revived the § 1983 claim. (*Id.*)  At the same time however, the Court noted that "it construes Plaintiff's § 1983 claim narrowly," excluding Plaintiff's termination from its scope. (*Id.*)  The Court stated that "Plaintiff's claim as to the manner of her termination remains separate from this [§ 1983] claim and falls under her Tenure Act claim, Tennessee Code Annotated § 49-5-511(b)." (*Id.*)

As explained above, this Court has resolved Plaintiff's Tenure Act claim. (ECF No. 237.)  And only Plaintiff's § 1983 claim remains. (ECF No. 302.)  The Court conducted a bench

trial on the § 1983 claim to determine (1) whether—and if so, when—Defendant placed

Plaintiff's name on a reemployment list under the Teacher Tenure Act, and (2) whether Plaintiff

suffered any damages attributable to Defendant as a result.  (ECF No. 304.)  The Court will now

turn to the evidence presented at trial.[6]  (ECF Nos. 304 & 307.)

## II.     Proof at Trial

### A.     Plaintiff's Testimony

Plaintiff testified at trial.  (ECF No. 304.)  She presented into evidence a printout of her

Tennessee Public License and copies of her evaluation forms.[7]  (Exs. 1 & 2.)  Plaintiff also

presented the termination letter she received from Shelby County Schools Superintendent Dorsey

Hopson in February 2016.  (Ex. 3.)  Plaintiff testified that Defendant never communicated

anything to her about placing her name on a reemployment list.

Plaintiff testified that Defendant maintains policies covering reductions in force, which

are accessible on the Shelby County website.  According to Plaintiff, the superintendent drafts

and disseminates school policies.  And Plaintiff submitted an exhibit of Shelby County policies

related to reductions in force.  (Ex. 7.)

Plaintiff testified that she met with Defendant's Labor Relations manager, Shontae

Branch, and other Messick AEP employees around the time of her termination, but Branch never

---

[6] In line with her tendency to rehash old issues, Plaintiff presented much evidence at trial
unrelated to her § 1983 claim.  For example, Plaintiff introduced evidence related to her
termination and focused her arguments on whether Defendant complied with the Tenure Act.
(ECF No. 304.)  But the Court has repeatedly explained that Plaintiff's § 1983 claim is separate
from her claim under the Tenure Act—which the Court has already resolved.  Indeed, the Court
held that Plaintiff's § 1983 claim does not encompass "the manner of her termination."  (ECF
No. 220 at PageID 6323.)  Even so, Plaintiff focused on her termination during trial and in her
post-trial brief.  (ECF No. 305 at PageID 8067.)  The Court will therefore limit its summary of
evidence only to that evidence presented at trial relevant to Plaintiff's § 1983 claim.
[7] Defendant stipulated for purposes of trial that Plaintiff's evaluation scores entitled her to
placement on the reemployment list under the Tenure Act.  (ECF No. 304.)

discussed Defendant's excessing practices.  And Plaintiff maintained that Defendant

communicated nothing to her about any preferred list for reemployment or placing her name on

such a list.

Plaintiff testified that after receiving the termination letter, she signaled her interest in

future employment opportunities with Defendant by attending a resume writing workshop hosted

by one of Defendant's employees, Tiffany Smith, in February 2016.  Plaintiff also testified that

she submitted various job applications for positions with Defendant.  Plaintiff introduced a list of

positions she applied for with Defendant.  (Ex. 4.)  Plaintiff submitted few applications during

the relevant timeframe.[8]  And very few of those applications related to teaching positions.

Plaintiff testified that she received no bona fide offers for comparable positions from

Defendant.  And Plaintiff stated, at least at first, that no one on Defendant's behalf

communicated with her about post-termination vacancies.  But Plaintiff acknowledged on cross-

examination that Carol Miller contacted Plaintiff after her initial termination to invite Plaintiff to

interview for a position with Defendant.  Plaintiff testified that she could not attend the interview

on the proposed date.  Apparently, the interview was not rescheduled, although it is unclear

whether Plaintiff requested alternative dates.  Plaintiff also testified that she seeks damages for

lost wages, asserting that the harm she suffered is a lack of reemployment.

On cross-examination, counsel for Defendant asked Plaintiff about her work experience

before becoming a teacher and the jobs for which she applied after Defendant eliminated her

---

[8] As stated above, the Court has already determined that the October 2018 Resolution brought
Plaintiff's termination into compliance with the Tenure Act.  (ECF No. 237 at PageID 6940,
6943.)  And the Court awarded Plaintiff backpay from her termination date through the date of
the October 2018 Resolution, October 30, 2018.  (*Id.* at PageID 6946.)  As a result, the relevant
period for Plaintiff's § 1983 claim begins on October 31, 2018.  Put another way, Defendant's
obligation to place Plaintiff's name on a reemployment list began when Defendant brought
Plaintiff's termination into compliance with the Tenure Act.

position.  Plaintiff testified that from February 2016 to March 2019, she saw no available

classroom jobs.  Plaintiff testified that she did not apply to any positions with Defendant after

March 2019.  (Ex. 4.)  But Plaintiff later recalled that she applied for a job with Defendant in

May 2019, although it was not a teaching job.

Counsel for Defendant also asked Plaintiff about mutual consent and whether she

understood that placing a teacher in a school requires both the teacher and principal to agree to

that placement.  In other words, because mutual consent is required, a superintendent lacks

unilateral authority to place a teacher at a school.  Plaintiff emphasized that her understanding of

the Tenure Act is that it requires that teacher evaluations guide the decision of whether to accept

an excessed teacher's placement at a school.[9]  Now the Court turns to the testimony of Eddie

Jones.

### B.    Eddie Jones

Plaintiff then called Eddie Jones to testify.  (ECF No. 304.)  Jones served as Defendant's

Manager of Recruitment and Certificated Staffing through August 2019.  As stated above, the

Court revived Plaintiff's § 1983 claim based on a finding that deposition testimony from Eddie

Jones "muddied the waters" as to whether Defendant ever placed Plaintiff on a reemployment

list.  (ECF No. 220 at PageID 6323.)  The Court expected Jones's testimony at trial to clear

things up.  But following his testimony at trial, the waters remain somewhat murky.

---

[9] The Tenure Act provides that when deciding whether to accept an excessed teacher's placement
in a vacant position, "[a] principal may refuse to accept the placement or transfer of a teacher by
the director of schools to the principal's school."  Tenn. Code Ann. § 49-5-511(b)(3).  And "[t]he
teacher's most recent evaluations shall be a factor in such determination."  *Id.*  But the Tenure
Act also states the director of schools retains the power to fill vacancies, subject to the
principal's ability to refuse, based on "the teacher's competence, compatibility, and suitability to
properly discharge the duties required for the vacant position considered in the light of the best
interest of the students in the school where the vacancy exists."  *Id.*

As Defendant's Manager of Recruitment and Certificated Staffing, Jones identified the needs of schools within his coverage and assisted the corresponding board members. Jones testified that Defendant had a manual covering state statutes and a separate manual covering internal policies and procedures.

Jones testified about Defendant's process for posting job vacancies. According to Jones, Defendant posted instructional vacancies on an applicant tracking system. Using a position control number ("PCN"), business partners for different schools would monitor the vacancies and applications. Business partners were responsible for posting positions in the SearchSoft system on the principal's behalf. From there, potential applicants could view the vacant positions online and apply for them. The business partners would make hiring recommendations to principals and remove filled positions from the system.

Jones testified that Defendant always maintained a list of individuals eligible for reemployment. Typically, business partners would add names to the reemployment list. Jones testified that the reemployment list did not mean that the individuals on the list had to be hired, but Defendant would encourage principals to look at and interview individuals on the list. Jones testified that the reemployment list included tenured teachers who Defendant had excessed based on a reduction in force.

Jones also testified that he had his own list of individuals, which he maintained in an Excel spreadsheet, including names of individuals eligible for reemployment. Jones's spreadsheet also contained his own comments and notes, which he did not put on the official reemployment list.

Jones testified that no board approval was needed to place an individual on the reemployment list. According to Jones, it was simply understood that excessed individuals

would be placed on the list.  Jones could not recall whether anyone had asked him to place Plaintiff's name on the reemployment list.  He then testified that Small and Branch had asked him if Plaintiff's name was on the reemployment list a few weeks before his deposition in this case.  Jones testified that he added Plaintiff's name to the reemployment list after that conversation.

Jones also tried to clarify his deposition testimony related to the existence of a reemployment list.  At various times, Defendant maintained a reemployment list on different electronic databases: (1) SearchSoft, (2) Zoho, (3) APECS, and (4) SharePoint.  At some point, Defendant also used a hybrid system, when Defendant maintained a reemployment list on Excel spreadsheets and on SearchSoft or Google Docs.  Jones's testimony was unclear about what happened during the periods when Defendant moved its reemployment list between the online systems.[10]  What is more, as described above, Jones also testified that he maintained an Excel spreadsheet with many names on the reemployment list.  Jones also testified that the process for adding an individual to the reemployment list did not occur right away.

Jones emailed several business partners in January 2019 stating that Plaintiff's name should be included on the reemployment list, then maintained on (or being migrated to) SharePoint, a web-based collaborative platform that integrates with Microsoft Office.  (Ex. 10.)  The email also included a list of other names to add to the reemployment list.  Jones testified that the list attached to his email, which included Plaintiff's name, was not Defendant's official reemployment list.  According to Jones, Defendant maintained its official reemployment list on

---

[10] Jones gave his deposition during one such transitionary period, while Defendant was in the midst of migrating its reemployment list from one online system to another.

the cloud-based SharePoint system.  While Jones's email included a link to the SharePoint file, Defendant did not introduce that file from the SharePoint system.

## III.    Findings of Fact

At the close of trial, the Court directed the parties to submit proposed findings of fact and conclusions of law.  (ECF No. 304.)  Plaintiff's trial brief includes no proposed findings of fact. (ECF No. 305.)  And the factual assertions in Plaintiff's legal arguments cite little or no supporting evidence.  (*Id.* at PageID 8071–89.)  By contrast Defendant's written submission follows the Court's directive.  (ECF No. 306.)

Rule 52 of the Federal Rules of Civil Procedure provides that "[i]n an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately."  Fed. R. Civ. P. 52(a)(1).  Put another way, "[t]here must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated."  *G.G. Marck & Assocs. v. Peng*, 309 F. App'x 928, 936 (6th Cir. 2009) (quoting *Grover Hill Grain Co. v. Baughman-Oster, Inc.*, 728 F.2d 784, 792 (6th Cir. 1984)); *see also Zack v. Comm'r*, 291 F.3d 407, 412 (6th Cir. 2002).  The Court has explained many of the relevant facts in the section above, but a few points merit further attention.

This case is unusual because after years of litigation, only a narrow issue remains.  As stated above, the Court conducted a bench trial on Plaintiff's § 1983 claim to determine (1) whether—and if so, when—Defendant placed Plaintiff's name on a reemployment list under the Teacher Tenure Act, and (2) whether Plaintiff suffered any damages attributable to Defendant as a result.[11]

---

[11] Plaintiff identifies four questions presented: (1) "Whether the Defendant violated [Plaintiff's] rights . . . by not placing her on a Preferred List for Employment pursuant to Tenn. Code Ann. §49-5-511(b)(1)-(4)(A-B)"; (2) "Whether Dr. Jones' Excel File is the Preferred List for

Eddie Jones's testimony, although confusing at times, answered the first question. The Court finds that Jones testified credibly at the trial. And based on Jones's testimony, the Court finds that Defendant placed Plaintiff's name on its reemployment list at some point after Jones's January 2019 email.[12] The Court finds also that Defendant failed to place Plaintiff's name on a reemployment list before that time.

The other issue is whether Plaintiff suffered an injury attributable to Defendant and what, if any, damages she incurred. As mentioned above, Plaintiff seeks lost wages because Defendant did not rehire her. Based on Plaintiff's testimony, the Court finds that Defendant has extended no employment offers to Plaintiff since terminating her employment. And Plaintiff has not worked for Defendant since her termination.

The Court finds it unnecessary to walk through the rest of the facts described in the section above, because this case comes down to the parties' legal arguments. The Court will therefore proceed to explain the elements of a claim under § 1983 and analyze whether Plaintiff has proven the essential elements of her claim.

## ANALYSIS

### I.   Elements of § 1983 Claim

For starters, "42 U.S.C. § 1983 permits individuals to bring suit against a state actor who deprives them of a federal right, either constitutional or statutory, without due process of law."

---

Employment"; (3) "Whether the second list presented by the Defendant is the Preferred List for Employment"; and (4) "Whether [Plaintiff] is entitled to compensatory damages . . . and attorney fees and litigation expenses." (ECF No. 305 at PageID 8067–68.)

[12] Plaintiff challenges the Court's admission of Jones's January 2019 email because it was not produced before his deposition. (ECF No. 305 at PageID 8081.) The Court overruled this objection at trial. What is more, Jones's credible trial testimony is sufficient on its own to show that Defendant maintained a reemployment list and that Defendant placed Plaintiff's name on the reemployment list after that January 2019 email.

*Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (citing *Ziegler v. Aukerman*, 512 F.3d 777, 781 (6th Cir. 2008)).  "Section 1983 creates no substantive rights, but 'merely provides remedies for deprivations of rights established elsewhere.'"  *Id.* (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).

The Sixth Circuit has set forth these elements a plaintiff must prove to succeed on a § 1983 claim: (1) "that he was deprived of a right secured by the Constitution or laws of the United States;" and (2) "that the deprivation was caused by a person acting under color of law." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001)); *see also Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003); *Ziegler*, 512 F.3d at 781 ("To prevail on a § 1983 claim, a plaintiff need only show that he or she was deprived of a constitutional right by a state actor.").  And the Sixth Circuit has held that "proximate causation is an essential element of a § 1983 claim for damages."  *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) (citing *Doe v. Sullivan Cnty.*, 956 F.2d 545, 550 (6th Cir. 1992); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–08 (1986)).

"If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding*, 241 F.3d at 532 (citing *Simescu v. Emmet Cnty. Dep't of Soc. Servs.*, 942 F.2d 372, 375 (6th Cir. 1991)).  The Court will now turn to whether Plaintiff has proven the elements of her § 1983 claim.

## II.  Plaintiff's § 1983 Claim

### A.  Constitutional Violation

"In order to sustain [a] § 1983 claim for deprivation of due process, [a plaintiff] must establish that [s]he had a constitutionally protected property interest and that [s]he was deprived

18

of the interest without adequate process." *Upshaw v. Metro. Nashville Airport Auth.*, 207 F. App'x 516, 518 (6th Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972)); *see also City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 432 (6th Cir. 2014). And "[a] protected property interest is one to which a plaintiff has a legitimate claim of entitlement under state law." *Agrawal v. Montemagno*, 574 F. App'x 570, 578–79 (6th Cir. 2014) (citing *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997)); *see also Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *Kelley*, 751 F. App'x at 657 ("A protected property interest is defined by the terms of the state document creating the interest.").

As explained above, this Court has determined that "the 2014 Tenure Act creates a protectable property interest in the process afforded to a teacher excessed as part of a legitimate reduction in force." (ECF No. 220 at PageID 6318.) Under Tenn. Code Ann. § 49-5-511(b)(3), "[a] teacher rated in the three (3) highest categories based on evaluations pursuant to § 49-1-302 who has been dismissed because of abolition of a position shall be placed on a list for reemployment." And so the Court held that "teachers rated in the three highest categories based on applicable evaluations . . . have a reasonable expectation that the school board will place their name on the reemployment list under Tennessee Code Annotated § 49-5-511(b)(3) (2014)." (*Id.* at PageID 6319–20.) As a result, "Plaintiff had a reasonable expectation that Defendant would place her name on a reemployment list after termination of the Adult Education Program." (*Id.*) The Court also made clear that "[t]his does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—in any position she applies for after her position is terminated. But Defendant is required, at bottom, to place her name on the reemployment list." (*Id.*)

As noted above, Defendant stipulated that Plaintiff's evaluation scores entitled her to placement on the reemployment list under the Tenure Act. (ECF No. 304.) Consequently, the

lone remaining question is whether Defendant violated Plaintiff's Fourteenth Amendment right by failing to place her name on the reemployment list. Of course, Defendant's obligation to place Plaintiff's name on a reemployment list began when Defendant passed the October 2018 Resolution bringing her termination into compliance with the Tenure Act. (ECF No. 237 at PageID 6946.) And the Court found in the section above that Defendant placed Plaintiff's name on a list for reemployment sometime after Jones's January 2019 email but before his deposition in early February.

Because Plaintiff fails to establish other elements of her claim, the Court need not decide whether this delay in placing Plaintiff's name on a reemployment list amounted to a constitutional violation. Instead the Court will now analyze the other elements of Plaintiff's claim assuming that the delay in placing Plaintiff's name on a reemployment list constitutes a constitutional deprivation.[13]

### B.   Acting Under Color of State Law

The second element a plaintiff must prove is that "a person acting under color of law" caused the deprivation. *Webb*, 789 F.3d at 659. A local school board is a "person" subject to suit under § 1983. *See Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 261–63 (6th Cir. 2006); *Doe v. Claibourne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996); *see also Thorpe v. Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 938 (E.D. Ky. 2014); *Howard v. Knox Cnty.*,

---

[13] The Court notes that Plaintiff cannot rely on Defendant's violation of its own internal policies to prevail on her § 1983 claim. This is because § 1983 is concerned only with violations of federal rights. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim." (citing *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005))); *see also Pethel v. State of Tenn. Dep't of Child. Servs.*, No. 3:10-cv-469-TAV-HBG, 2020 WL 6827791, at *8 (E.D. Tenn. Nov. 20, 2020) ("Plaintiffs cannot assert a § 1983 claim for violations of state policy or state law, as § 1983 only protects federally created rights.").

Nos. 3:15-CV-6-TAV-CCS, 2016 WL 9455169, at *5–6 (E.D. Tenn. Sept. 7, 2016), *aff'd*, 695 F. App'x 107 (6th Cir. 2017) (collecting cases).  But a local government entity "cannot be held liable simply because one of its employees has committed a constitutional violation."  *Andrews v. Wayne Cnty.*, 957 F.3d 714, 721 (6th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 260 (6th Cir. 2015).

"[A]cting under color of state law requires that a defendant in a § 1983 action have exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of state law.'"  *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Shorts v. Bartholomew*, 255 F. App'x 46, 52 (6th Cir. 2007). And so a governmental entity like Defendant is liable under § 1983 "only if a plaintiff establishes 'an unconstitutional action that implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . .'"  *Scarbrough*, 470 F.3d at 261 (quoting *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)); *see also McComas v. Bd. of Educ.*, 422 F. App'x 462, 470 (6th Cir. 2011); *Claibourne Cnty.*, 103 F.3d at 507; *Thorpe*, 8 F. Supp. 3d at 938.

### i.      Final Decisionmaker

A plaintiff can establish liability for a local government entity by proving that "an official with final decision-making authority ratified illegal actions."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Indeed, only those officials with "final policymaking authority" may subject a government entity to § 1983 liability.  *Jones v. Clark Cnty.*, 959 F.3d 748, 762 (6th Cir. 2020) (quoting *City of St.*

*Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)); *see also Scarbrough*, 470 F.3d at 262 ("The Board can only be liable for its members' actions where those members have final authority to establish municipal policy." (citing *Praprotnik*, 485 U.S. at 127–28; *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993))). "Even a single action can be official municipal policy, as long as the decisionmaker acts with a governmental authority." *Scarbrough*, 470 F.3d at 262 (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)).

Defendant argues that Plaintiff failed to identify an individual employee as being responsible for the alleged constitutional deprivation. (ECF No. 306 at PageID 8104–05.) The alleged decisionmaker Plaintiff identifies in trial and in her post-trial brief is Superintendent Hopson. (ECF No. 305 at PageID 8074.) Plaintiff asserts that "Hopson—one of the policy makers and the statutory agent for the Defendant—acted under the color of state law by virtue of the power given [to] him under Tennessee statutes, when he terminated [Plaintiff] without the benefit of a pre-deprivation process, and [without] placement on the preferred list for employment." (*Id.*) Plaintiff asserts that "Hopson acted in his official capacity" and that "Hopson's actions are properly chargeable to the Defendant," because "Hopson was one of [Defendant's] officials with final policy-making authority to recommend, draft and disseminate board policy." (*Id.*)

 "Whether an individual is a final policymaker for purposes of § 1983 liability is a question of state or local law, and a showing of policymaking authority typically requires specific evidence that the official's decisions were not subject to review or that the official could set policy related to broad goals." *Tlapanco v. Elges*, 969 F.3d 638, 658 (6th Cir. 2020) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005); *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 638 (6th Cir. 2012)). "Whether a municipal official is a policymaker depends

on the conduct in question; the same official may be a policymaker in some situations but not in others." *Jorg v. City of Cincinnati*, 145 F. App'x 143, 147 (6th Cir. 2005) (citing *Pembaur*, 475 U.S. at 483)).

Plaintiff cites no evidence showing that Hopson qualifies as a final decisionmaker when placing an excessed tenured teacher on a list for reemployment.  In fact, Plaintiff included no proposed findings of fact in her post-trial brief.  True enough, the Court found that the Board improperly delegated authority to Hopson to terminate Plaintiff.  But Plaintiff provided no evidence at trial connecting Hopkins to the reemployment list.  Although Plaintiff testified that Hopson was responsible for drafting and disseminating school policies, the Court finds this testimony alone insufficient to show that Hopson qualified as one with final decision-making authority related to the reemployment list.  Even more, Plaintiff identifies no evidence connecting Hopson to the reemployment list.  And the Court therefore finds that Plaintiff fails to prove that an individual with final policymaking authority ratified illegal actions related to the failure to place her name on a reemployment list.

### ii.   Pattern of Misconduct

Plaintiff alternatively contends that she can "establish a pattern of past misconduct" sufficient to show that Defendant acted under color of state law when it failed to place her on a reemployment list.  (ECF No. 305 at PageID 8074.)  True enough, a plaintiff can establish an illegal policy or custom by proving "the existence of a custom of tolerance or acquiescence of federal rights violations."  *Burgess*, 735 F.3d at 478 (citing *Thomas*, 398 F.3d at 429).  And Plaintiff claims that her "termination by Hopson resulted from a custom or common practice of [Defendant] to allow the superintendent and or a superintendent designee to terminate tenured teachers."  (ECF No. 305 at PageID 8075.)  But the relevant constitutional deprivation

underlying Plaintiff's § 1983 claim here is not her termination.  It is Defendant's delay in placing her on a reemployment list.

Plaintiff's argument again misses the mark by focusing on her termination instead of the reemployment list.  And Plaintiff has not argued or tried to show that a "clear and persistent pattern" exists related to Defendant's failure to place excessed tenured teachers on a list for reemployment.  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007); *see also Thomas*, 398 F.3d at 429; *Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005).  As a result, her argument legally cannot show "a custom of tolerance or acquiescence of federal rights violations."  *See Burgess*, 735 F.3d at 478.

Because Plaintiff makes no other arguments about Defendant "acting under color of state law" related to the reemployment list, the Court finds that Plaintiff has failed to prove this essential element of her § 1983 claim.  For completeness, the Court will address the remaining elements of Plaintiff's claim.

### C.    Proximate Causation

As stated above, the Sixth Circuit has held that "[p]roximate causation is an essential element of a § 1983 claim for damages."  *Roberts v. Coffee Cnty.*, 826 F. App'x 549, 554 (6th Cir. 2020) (citing *Sullivan Cnty.*, 956 F.2d at 550); *see also Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 41 (6th Cir. 2005) (same) (quoting *Horn*, 22 F.3d at 659).  A § 1983 plaintiff "is entitled to all damages that compensate for injuries caused by the deprivation of constitutional rights," but not damages "too remote" from the constitutional violation alleged. *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10 C 00400, 2016 WL 9116026, at *2 (M.D. Tenn. Apr. 8, 2016) (citing *Memphis Cmt. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)).  Put another way, "[a] violation of a federally secured right is remediable in damages

24

only upon proof that the violation proximately caused injury." *Sowards*, 125 F. App'x at 41

(quoting *Horn*, 22 F.3d at 659; citing *Ellis v. Washington Cnty.*, 198 F.3d 225, 226 (6th Cir.

1999) (affirming summary judgment in a § 1983 action where the plaintiff failed to show

proximate causation)).

      The causation element requires a plaintiff to link the alleged misconduct to the plaintiff's

injury. *See Roberts*, 826 F. App'x at 554. Plaintiff contends here that she is entitled to damages

for her lost wages. And the harm she alleges is Defendant's failure to re-hire her. But Plaintiff

has given no evidence linking this harm to Defendant's delay in placing her name on the

reemployment list. This is because placement on the reemployment list does not guarantee

placement in another position.

      The Court has already explained that "a teacher's inclusion on the reemployment list does

not guarantee placement because '[a] principal may refuse to accept the placement or transfer of

a teacher . . . [based on] [t]he teacher's most recent evaluations . . . .'" (ECF No. 88 at PageID

2630 (quoting Tenn. Code Ann. § 49-5-511(b)(3); citing *Lee*, 237 S.W.3d at 334).) And the

Court reiterated that while the Tenure Act requires placement on a reemployment list, "[t]his

does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—in any

position she applies for after her position is terminated." (ECF No. 220 at PageID 6319.)

      Because placement on the reemployment list does not guarantee placement in another

position, the Court finds that Plaintiff has not shown that Defendant's delay in placing her name

on the reemployment list caused her any harm. What is more, for this reason, the Court has

misgivings about whether a plaintiff asserting a § 1983 claim like this—one based on a local

board of education's failure to place the plaintiff's name on a reemployment list as required by

the Tenure Act—can ever prove damages. Therefore, even if Plaintiff proved a technical due

process violation, she has not proven damages.  In sum, the Court finds that Plaintiff has not proven that Defendant's delay in placing her name on a reemployment list caused the complained of harm, Plaintiff's lost wages.  Plaintiff's § 1983 claim therefore fails.

<u>**CONCLUSION**</u>

In the end, Plaintiff has not established essential elements of her § 1983 claim.  The Court will therefore enter judgment for Defendant on this claim.

**SO ORDERED**, this 14th day of June, 2022.

s/Thomas L. Parker

THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE