**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| SONYA P. WILLIAMS,     ) <br>     ) <br>    Plaintiff,     ) <br>     ) <br> v.     ) <br>     ) <br> SHELBY COUNTY BOARD OF     ) <br> EDUCATION,     ) <br>     ) <br>    Defendant.     ) | No. 2:17-cv-02050-TLP-jay |

**ORDER ON § 1983 PROCEDURAL-DUE-PROCESS CLAIM**

Following a bench trial and a remand from the Sixth Circuit, this Court again considers whether Plaintiff Dr. Sonya P. Williams[1] has proven that Defendant Shelby County Board of Education ("Board") deprived her of procedural due process. As explained below, Plaintiff has proven this claim by a preponderance of the evidence. Having considered the full range of damages available to a successful procedural-due-process plaintiff, the Court finds that she is entitled to nominal damages. The Court will therefore enter judgment in Plaintiff's favor.

**BACKGROUND**

This is an old case with a well-documented history. So the following background is brief and tailored to the single issue here—whether the Board's delay in placing Plaintiff's name on a reemployment list violated her due process rights.

In 2017, Plaintiff sued her former employer, the Board, asserting claims under 42 U.S.C. § 1983, Title VII, and Tennessee law. (ECF No. 1.) The Court dismissed some claims but

---

[1] Although represented by counsel when she first sued here, Plaintiff is now pro se.

eventually found that "the Board violated the Tennessee Teacher Act when it excised Plaintiff without the Board making the final determination." (ECF No. 237 at PageID 6940.) The Court then awarded Plaintiff $211,019.73 in back-pay, plus $24,515.68 in prejudgment interest. (*See* ECF No. 254.) Plaintiff has since received these funds. (*See* ECF No. 336.)

The remaining § 1983 procedural-due-process claim eventually proceeded to a bench trial in 2022. (ECF No. 304.) The Court found for the Board, reasoning that although Plaintiff had a property interest in being placed on the Board's unemployment list, she failed to prove action "under color of law" and failed to establish causation. (ECF No. 309.) Plaintiff appealed. (ECF No. 311.) After review, the Sixth Circuit held that the Court incorrectly granted judgment for the Board on this claim but did not err on her other claims. *Williams v. Shelby Cnty., Tennessee, Bd. of Educ.*, No. 22-5591, 2025 WL 1370082, at *1, *15 (6th Cir. May 12, 2025). The Sixth Circuit instructed:

> We thus remand for the district court to analyze the latter two elements of the procedural-due-process claim and decide in the first instance whether Williams has proven a procedural-due-process violation. If it finds that Williams has done so, the district court should evaluate whether Williams is entitled to compensatory damages or mere nominal damages. In evaluating compensatory damages, the district court should consider the full range of damages available to a successful procedural-due-process plaintiff.

*Id.* at *12. The parties have now briefed these issues. (ECF Nos. 345, 348.)

## I.    Findings of Fact

At the close of trial, the Court directed the parties to submit proposed findings of fact and conclusions of law. (ECF No. 304.) The Board did so. (ECF No. 306.) But Plaintiff's trial brief included no proposed findings of fact and the factual assertions that she did make cited little or no supporting evidence. (*See* ECF No. 305 at PageID 8071–89.) This time around, however, Plaintiff has submitted proposed facts. (ECF No. 45 at PageID 8522–26.) The Court considers

2

all these submissions here but incorporates its earlier factual findings unless otherwise noted.

(*See* ECF No. 309.)  *See* Fed. R. Civ. P. 52(a)(1).

Plaintiff is a tenured teacher who began working for the Board in 2002.  (ECF No. 309 at

PageID 8110.)  The State of Tennessee pulled grant funding for the school Plaintiff worked at in

February 2016.  (*Id.*)  So the Board's superintendent sent Plaintiff and other teachers at her

school a termination letter.  (*Id.*; *see* ECF No. 122-5 at PageID 3330.)  The Board later excessed

Plaintiff.  (*Id.*)

When a public school in Tennessee reduces its workforce, as here, certain qualified

teachers must be put on a reemployment list.  Tenn. Code Ann. § 49-5-511(b)(3) (2014).

Plaintiff was one such qualified teacher.  But the Board did not add her name to the

reemployment list after terminating her.

The Board passed a resolution in October 2016 which ratified some terminations it made

during the previous three school years.  (ECF No. 309 at PageID 8112.)  Plaintiff's name was not

included in the resolution nor was it added to the reemployment list at that time.  (*Id.*)  The

Board passed another resolution two years later "in an apparent effort to ratify the termination of

certain excessed employees whose names it had omitted (like Plaintiff's) from the October 2016

Resolution."  (*Id.*)  The October 2018 Resolution included Plaintiff name—which then made her

termination lawful—but the Board still failed to place her name on the reemployment list.  (*Id.*)

The Board finally placed Plaintiff's name sometime in January or February 2019.  (*Id.* at

PageID 8125.)  Eddie Jones, the Board's staffing manager, testified at trial about the Board's

reemployment list procedures.  The Board maintained its list on several different electronic

databases, and Jones was unclear about what happened when the list migrated between these

various databases.  (*Id.* at PageID 8123.)  He explained that Plaintiff's name had not made it onto

the list earlier than January or February 2019 because "we didn't have the vacancies filled that we needed" and so the Board "decided . . . not to have individuals put on that list in addition to what we already had." (ECF No. 314 at PageID 8253–24.)  At any rate, Jones sought to consolidate a central reemployment list in early 2019 and exchanged emails with other administrators to do so. (*Id.* at PageID 8257.)  Plaintiff's name appeared in the email exchange and Jones eventually added it to the list. (ECF No. 309 at PageID 8123.)  Jones did not recall whether anyone had asked him to put Plaintiff's name on the January 2019 email exchange. (*Id.*)

## ANALYSIS

"The Fourteenth Amendment's Due Process Clause bars States from 'depriv[ing] any person of life, liberty, or property, without due process of law[.]'" *Novak v. Federspiel*, 140 F.4th 815, 821 (6th Cir. 2025) (quoting U.S. Const. amend. XIV, § 1).  Plaintiff claims that the Board violated the Fourteenth Amendment by omitting her name from the reemployment list after excising her.  For the reasons below, Plaintiff has proven her claim by a preponderance of the evidence and is entitled to nominal damages.

## I.      Procedural Due Process

To prove a § 1983 procedural-due-process claim, a plaintiff must show: "(1) that she has a 'life, liberty, or property interest requiring protection under the Due Process Clause,' (2) that the government 'depriv[ed] [her] of that interest,' and (3) that the government carried out that deprivation 'without adequate process.'" *Williams*, 2025 WL 1370082, at *8 (quoting *Fields v. Henry Cnty.*, 701 F.3d 180, 185 (6th Cir. 2012)).

Plaintiff has proven the first element of her claim because she had a protected property interest in being placed on the Board's reemployment list.  The Court has explained why many

times.  (*See* ECF No. 88 at PageID 2628–29; ECF No. 220 at PageID 6313–20; ECF No. 309 at

PageID 8116–18, 8127.)  In short:

> [T]his Court has determined that "the 2014 Tenure Act creates a protectable
> property interest in the process afforded to teachers as part of a legitimate reduction
> in force."  Under Tenn. Code Ann. § 49-5-511(b)(3), "[a] teacher rated in the three
> (3) highest categories based on evaluations pursuant to § 49-1-302 who has been
> dismissed because of abolition of a position shall be placed on a list for
> reemployment." And so the [has] Court held that "teachers rated in the three highest
> categories based on applicable evaluations . . . have a reasonable expectation that
> the school board will place their name on the reemployment list under Tennessee
> Code Annotated § 49-5-511(b)(3) (2014)." As a result, "Plaintiff had a reasonable
> expectation that Defendant would place her name on a reemployment list after
> termination of the Adult Education Program." The Court also made clear that "[t]his
> does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—
> in any position she applies for after her position is terminated. But Defendant is
> required, at bottom, to place her name on the reemployment list."

(ECF No. 309 at PageID 8127 (internal citations omitted).)

Even still, the Board urges the Court to "revise its prior holdings."  (ECF No. 348 at

PageID 8576 n.2.)  This is not a meritless argument.  In fact, the Board makes forceful

arguments.[2]  *See* Fed. R. Civ. P. 54(b).  And to be sure, the Sixth Circuit did not "decide whether

the Tennessee Tenure Act's reemployment list provisions confer a . . . 'property interest.'"  *Id.* at

---

[2] The Board argues that the 2014 Tenure Act does not create a property right because
"Tennessee's statutorily created reemployment list is only a procedural requirement and not a
guarantee of entitled to valuable [a] substantive right."  (ECF No. 348 at PageID 8577.)  It also
notes that another district court in Tennessee has found that the Tenure Act does not create a
property interest.  (*Id.*)  *See Doe v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 20-
1023, 2021 WL 6052699, at *7 (M.D. Tenn. Dec. 21, 2021) ("In sum, Leffler cannot escape the
fact that, as a *non-tenured teacher* who worked through the expiration of her contract term, she
does not have a protected property interest upon which to premise her due process claim."
(emphasis added)).  This analysis is well-reasoned.  But this Court has also carefully considered
the Board's arguments on this issue and rejected them more than once.  (S*ee* ECF No. 220 at
PageID 6317–20.)  Given the law of the case here, the Court declines to revisit the issue again.
*Cf. Edmonds v. Smith*, 922 F.3d 737, 739–40 (6th Cir. 2019) (discussing the law-of-the-case
doctrine and noting that it "does not mark a limit on a court's authority—courts are free to revisit
their own rulings before final judgment—but is instead a recognition that for cases to reach
resolution, issues cannot be argued and reargued without end" (citation omitted)).

*15 (Batchelder, J., concurring) (citation omitted).  But the Sixth Circuit's instructions here are clear: "We thus remand for the district court to *analyze the latter two elements* of the procedural-due-process claim and decide in the first instance whether Williams has proven a procedural-due-process violation."  *Id.* at *12.  The Court thus declines the Board's invitation to rehash its earlier conclusions about the property interest and instead turns to the remaining issues—whether the Board deprived Plaintiff of her property interest without adequate process.

The second procedural-due-process element asks whether the Board's delay in placing Plaintiff's name on the reemployment list "amounted to a 'deprivation' of Williams' property interest."  *Id.* at *11; *see Howard v. Grinage*, 82 F.3d 1343, 1351 (6th Cir. 1996) ("[T]he constitutional inquiry no longer addresses what process was due and whether [the deprivation] was constitutionally sufficient, but whether the decision to *deprive* was itself constitutionally defective." (emphasis in original) (citation omitted)).

"Deprivation" in the procedural-due-process context is a nuanced term—"not any old deprivation will do."  *Reed v. Presque Isle Cnty.*, 702 F. Supp. 3d 553, 577 (E.D. Mich. 2023).  A merely negligent deprivation is not constitutionally defective.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) ("Not only does the word 'deprive' in the Due Process Clause connote more than a negligent act, but we should not 'open the federal courts to lawsuits where there has been no affirmative abuse of power.'" (citations omitted)).  To offend the Constitution, the conduct at issue must rather "be grossly negligent, deliberately indifferent, or intentional."  *Howard*, 82 F.3d at 1350 (citations omitted).

Picking up on this nuance, the Board argues that its delay was caused by negligence rather than deliberate conduct.  (ECF No. 348 at PageID 8573–76.)  And because "such negligent conduct cannot possibly establish a procedural due process violation," the Board argues that

6

Plaintiff's claim fails.  (*Id.* at PageID 8576.)  Citing the Sixth Circuit's finding that

Superintendent Hopson "caused" her name to be excluded from the reemployment list and made

a "deliberate choice" to do so, Plaintiff argues that she satisfies this element.  (ECF No. 345 at

PageID 8531–32.)  The Board is quick to point out that the Sixth Circuit made this finding in

"the context of whether the omission of [Plaintiff's] name was accomplished under color of law,

which is not the same analysis as whether a government official deliberately deprived a citizen of

a property right."  (ECF No. 348 at PageID 8576 n.1.)

Fair enough.  But this context aside, the Board still chose to omit Plaintiff's name from

the reemployment list.  As Jones testified, the Board's own superintendent "*decided . . .* not to

have individuals put on [the reemployment list] in addition to what we already had."  (ECF No.

314 at PageID 8253–54 (emphasis added).)  Nor does the context change the fact that omitting

these individuals from the list, including Plaintiff, was a "deliberate choice."  *Williams*, 2025 WL

1370082, at *9.

It follows that Plaintiff has established a non-negligent deprivation here.  *Contrast*

*Howard*, 82 F.3d at 1351 ("The conduct was intentional because there were no facts indicating

that Franklin was placed in segregation by mistake, inadvertently, or placed there temporarily

and forgotten." (discussing *Franklin v. Aycock*, 795 F.2d 1253 (6th Cir. 1986)), *with Int'l Metal*

*Trading Inc. v. City of Romulus, Mich.*, 438 F. App'x 460, 462–63 (6th Cir. 2011) (finding no

deprivation when the plaintiff produced "no evidence that there was a non-negligent decision to

deprive them of [their] property").

The third and final element of Plaintiff's procedural-due-process claim asks whether the

Board "carried out [its] deprivation 'without adequate process.'"  *Williams*, 2025 WL 1370082,

at *8 (quoting *Fields*, 701 F.3d at 185).  The Board did not brief this element.  And given that

Plaintiff received no process at all, the Court concludes that the Board failed to provide her with adequate process.

And so, having found a procedural-due-process violation, the Court next considers Plaintiff's damages.

## II.    Damages

Plaintiff may receive either nominal or compensatory damages.  Nominal damages "are a symbolic recognition of harm that may be awarded without proof of actual harm and 'have only declaratory effect.'"  *Pagan v. Vill. of Glendale*, 559 F.3d 477, 478 n.1 (6th Cir. 2009) (quoting *Morrison v. Bd. of Educ.*, 521 F.3d 602, 610 (6th Cir. 2008)).  The payout for nominal damages is low, typically around $1.00.  *See Nationwide Recovery, Inc. v. City of Detroit, Mich.*, 163 F.4th 977, 992 (6th Cir. 2026) ("So Nationwide is only 'entitled to recover nominal damages not to exceed one dollar." (quoting *Carey v. Piphus*, 435 U.S. 247, 267 (1978)).  Courts award nominal damages by "default" and only turn to compensatory damages if "the plaintiff establishes entitlement" to compensatory damages.  *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290 (2021) (citation omitted).  And compensatory damages, as the name suggests, compensate a plaintiff for "the injuries that are caused by the deprivation of constitutional rights."  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).  The available payout compensates for "'not only out-of-pocket loss,' but also 'other monetary harms,' as well as 'impairment of reputation,' and 'mental anguish.'" *Williams*, 2025 WL 1370082, at *10 (quoting *Memphis Cmty. Sch. Dis.*, 477 U.S. at 307).

Plaintiff seeks compensatory damages.  Rather than arguing that her exclusion from the reemployment list cost her reputational harm or mental anguish; she argues that the constitutional violation cost her valuable job opportunities and prevented the Board from rehiring

8

her. (*See* ECF No. 345 at PageID 8537–39.) Because of this, Plaintiff requests somewhere between $574,000.00 and $902,000.00 to compensate "for lost wages" beginning in November 2018 through "the remainder of her expected work life."[3] (*Id.* at PageID 8536.) In the alternative, Plaintiff requests "nominal damages to include attorney fees and expenses." (*Id.* at PageID 8541.) The Board argues that the Court should only award nominal damages because Plaintiff offered no evidence at trial "linking [her] lost wages to the School Board's delay in placing her name on the reemployment list." (ECF No. 348 at PageID 8577–78.)

The Sixth Circuit uses a two-step process to determine whether compensatory, rather than nominal, damages are appropriate. *See Nationwide Recovery, Inc.*, 163 F.4th at 989. The first question is "whether the action taken without due process [wa]s justified or, in other words, whether the same action would have been taken even if due process had been afforded." *Id.* at 989–90 (citation omitted). If the plaintiff makes this showing, the second question becomes whether "there is proof of actual injury . . . to support an award of compensatory damages." *Id.* (citation omitted).

Plaintiff clears the first hurdle. Indeed, had the Board put Plaintiff's name on the reemployment list and, in doing so provided her adequate process—then there would have been no constitutional violation in the first place. *See id.* at 990 ("The first part of this framework asks us to engage with a counterfactual: Would the deprivation of life, liberty, or property have still occurred even if there had been due process?").

---

[3] Keep in mind that under the Tenure Act, the Court has already awarded Plaintiff over $200,000.00 in backpay for the period between her termination in 2016 and the Board's 2018 ratification of her dismissal.

But compensatory damages are unavailable here because Plaintiff fails to clear the second

hurdle—proof of actual injury.  As this Court explained:

> Plaintiff contends here that she is entitled to damages for her lost wages. And the harm she alleges is Defendant's failure to re-hire her.  But Plaintiff has given no evidence linking this harm to Defendant's delay in placing her name on the reemployment list.  This is because placement on the reemployment list does not guarantee placement in another position.
> The Court has already explained that "a teacher's inclusion on the reemployment list does not guarantee placement because '[a] principal may refuse to accept the placement or transfer of a teacher . . . [based on] [t]he teacher's most recent evaluations . . . .'" (ECF No. 88 at PageID 2630 (quoting Tenn. Code Ann. § 49-5-511(b)(3); citing *Lee*, 237 S.W.3d at 334).)  And the Court reiterated that while the Tenure Act requires placement on a reemployment list, "[t]his does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—in any position she applies for after her position is terminated." (ECF No. 220 at PageID 6319.)
> *Because placement on the reemployment list does not guarantee placement in another position, the Court finds that Plaintiff has not shown that Defendant's delay in placing her name on the reemployment list caused her any harm.*

(ECF No. 309 at PageID 8133 (emphasis added).)

The Court erred earlier when it found that the lack of harm prevented Plaintiff from

*proving* her procedural-due-process claim.  *See Williams*, 2025 WL 13570082, at *10–11.  But

here the Court finds that her failure to prove harm works against her claim for compensatory

damages.  To be sure, Plaintiff testified that she applied for at least one classroom teaching job

between 2016 and the trial.  (ECF No. 314 at PageID 8207.)  But nothing in the record suggests

that the omission of Plaintiff's name from the reemployment list *caused* her to miss that or any

other job opportunity.  This is not to say compensatory damages are unavailable to a plaintiff

who proves that a procedural-due-process violation caused the loss of career opportunities.  *See*

*Williams*, 2025 WL 13570082, at *11 (citing *Tercero v. Texas Southmost Coll. Dist.*, 989 F.3d

291, 299 (5th Cir. 2021)).  It is only to say that Plaintiff has introduced no viable proof here that

the Board's failure to include her name on the list *caused* her to lose such opportunities.  And

this Court cannot now create that proof for her.  Plaintiff is therefore entitled only to nominal

damages in the amount of $1.00.

That leaves one lingering matter.  Plaintiff asks that her nominal damages include

attorneys' fees and expenses.  (ECF No. 345 at PageID 8541.)  By definition, however, a

nominal damages award includes neither.  That said, Plaintiff may be entitled to expenses.  *See*

*Pouillon v. Little*, 326 F.3d 713, 717 (6th Cir. 2003) (first citing *Farrar v. Hobby*, 506 U.S. 103,

115 (1992), then citing *Johnson v. City of Aiken*, 278 F.3d 333, 338 (4th Cir. 2002)); 42 U.S.C. §

1988.  But she is not entitled to attorneys' fees because her attorneys have already received

payment for their services.  (ECF Nos. 173, 336.)  And Plaintiff has proceeded pro se ever since

firing those attorneys in March 2019.  (*See* ECF Nos. 171, 172.)  *See Kay v. Ehrler*, 499 U.S.

432, 435 (1991) (stating that pro se litigants are not entitled to attorneys' fees under 42 U.S.C. §

1988).  At any rate, Plaintiff may move for expenses if she wishes.

## CONCLUSION

The Court finds that Plaintiff has proven her procedural-due-process claim.  But she has

not proven an actual injury supporting a compensatory damage award.  The Court accordingly

awards Plaintiff $1.00 in nominal damages and will enter judgment in her favor.

**SO ORDERED**, this 5th day of August, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE